UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CHRISTOPHER CLOKE-BROWNE,

                          Plaintiff,

             v.

BANK OF TOKYO-MITSUBISHI UFJ, LTD.,
MITSUBISHI UFJ FINANCIAL GROUP,
HIDEYUKI TORIUMI, MASAHIRO HOSOMI,
KYOTA OMORI, TIMOTHY S. TRACEY,
RANDALL C. CHAFETZ, and ANTHONY
MOON in their official and individual capacities,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Civil Action No. 10-CIV-2249 (LTS)

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Dated:  New York, New York
       April 30, 2010

Of Counsel:

     Peter A. Walker
     Lori M. Meyers

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Defendants

# TABLE OF CONTENTS

Page

Table of Authorities .............................................................................................................. ii

I.      Plaintiff's Conclusory Complaint Cannot Survive a Motion to Dismiss............................3

        A.      The Motion to Dismiss Standard ...................................................................3

II.     Plaintiff Cannot Establish a Cause of Action for Breach of Contract ................................5

III.    Plaintiff's Claim for Breach of Implied Contract is Also Not Viable ................................6

IV.     Plaintiff Cannot Establish a Cause of Action for Fraudulent Inducement,
        Fraudulent Concealment or Promissory Estoppel.................................................................8

        A.      Fraudulent Inducement ...................................................................................8

        B.      Fraudulent Concealment ...............................................................................11

        C.      Promissory Estoppel .....................................................................................12

        D.      Plaintiff's Fraud Claims are Duplicative of His Contract Claims  and
                Should be Dismissed......................................................................................12

V.      Plaintiff's Claim for Violation of the New York Labor Law Should be Dismissed..........13

VI.     Plaintiff's Section 1981, Title VII, NYSHRL and NYCHRL Claims of
        Discrimination Based on Race and National Origin Should be Dismissed ......................14

VII.    Plaintiff's Claims of Retaliation Under Section 1981, Title VII, the NYSHRL and
        the NYCHRL Should be Dismissed. ................................................................................18

VIII.   Plaintiff Cannot Establish Aiding or Abetting Liability Against the Individual
        Defendants ........................................................................................................................20

IX.     Plaintiff's SOX Claim Should be Dismissed ...................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amofa v. Bronx-Lebanon Hosp. Ctr.*,
No. 05 Civ. 9230 (SHS), 2006 WL 3316278 (S.D.N.Y. Nov. 13, 2006) ..............................19

*Anderson v. Conboy*,
156 F.3d 167 (2d Cir. 1998)................................................................................................15

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (U.S. 2009).............................................................................................4, 18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................................3, 4, 5

*Bernhardt v. Tradition N. Am.*,
676 F. Supp. 2d 301 (S.D.N.Y. 2009)..................................................................................7

*Bessemer Trust Co., N.A. v. Branin*,
498 F. Supp. 2d 632 (S.D.N.Y. 2007)................................................................................12

*Brady v. Calyon Sec. (USA) Inc.*,
406 F. Supp. 2d 307 (S.D.N.Y. 2005)...........................................................................10, 22

*Coleman v. BrokersXpress, LLC*,
No. 08 Civ. 5085 (SAS), 2008 WL 4778675 (S.D.N.Y. Oct. 31, 2008) ...............................18

*Colodney v. Continuum Health Partners, Inc.*,
No. 03 Civ. 7276 (DLC), 2004 WL 829158 (S.D.N.Y. Apr. 15, 2004) ..................................7

*Cruz v. Coach Stores, Inc.*,
202 F.3d 560 (2d Cir. 2000)................................................................................................15

*Darden v. DaimlerChrysler N. Am.*,
191 F. Supp. 2d 382 (S.D.N.Y. 2002).................................................................................15

*Dooley v. Metro. Jewish Health Sys.*,
No. 02-CV-4640 (JG), 2003 WL 22171876 (E.D.N.Y. July 30, 2003)............................8, 12

*Dooner v. Keefe, Bruyette & Woods, Inc.*,
157 F. Supp. 2d 265 (S.D.N.Y. 2001)..................................................................................9

*Ercole v. U.S. Dep't of Transp.*,
No. 07-CV-2049 (JFB) (AKT), 2008 WL 4190799 (E.D.N.Y. Sept. 10, 2008) ...................18

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*,
375 F.3d 168 (2d Cir. 2004)................................................................................................10

Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP,
    491 F. Supp. 2d 386, 399 (S.D.N.Y. 2007)..............................................................19

Falbaum v. Pomerantz,
    19 Fed. Appx. 10 (2d Cir. 2001) ............................................................................20

Falchenberg v. N.Y. State Dep't of Educ.,
    338 Fed. Appx. 11 (2d Cir. June 8, 2009)...............................................................20

Feingold v. N.Y.,
    366 F.3d 138 (2d Cir. 2004).....................................................................................20

Forrest v. Jewish Guild for the Blind,
    309 A.D.2d 546 (1st Dep't 2003) ............................................................................20

Francis v. Pactiv Corp.,
    No. CV 04-0417 (WDW), 2007 WL 879672 (E.D.N.Y. Mar. 21, 2007) ...............17

Fraser v. Fid. Trust Co. Int'l,
    417 F. Supp. 2d 310 (S.D.N.Y. 2006).................................................................21, 23

Fraser v. Fid. Trust Co., Int'l,
    No. 04 Civ. 6958 (PAC), 2009 WL 2601389 (S.D.N.Y. Aug. 25, 2009).................7

Gattegno v. Admin. Review Bd.,
    353 Fed. Appx. 498 (2d Cir. 2009)..........................................................................21

Gatto v. Jet Blue Airways,
    No. 2009 Civ. 983 (LTS)(KNF), 2010 WL 125974 (S.D.N.Y. Jan. 13, 2010) .......5, 15, 16, 17

Geldzahler v. N.Y. Med. Coll.,
    663 F. Supp. 2d 379 (S.D.N.Y. 2009).......................................................................5

Graves v. Deutsche Bank Sec. Inc.,
    No. 07 Civ. 5471 (BSJ), 2010 WL 997178 (S.D.N.Y. Mar. 18, 2010) .............11, 12

Gueye v. United Fed. of Teachers,
    No. 00 Civ. 1766 (RMB), 2003 WL 21783124 (S.D.N.Y. Aug. 1, 2003).................18

Hargett v. Nat'l Westminster Bank, USA,
    78 F.3d 836 (2d Cir. 1996).......................................................................................15

Harp v. Charter Commc'ns, Inc.,
    558 F.3d 722 (7th Cir. 2009) ...................................................................................24

Hawthorne Group, LLC v. RRE Ventures,
    7 A.D.3d 320 (1st Dep't 2004) ................................................................................12

Hirsch v. Columbia Univ.,
    293 F. Supp. 372 (S.D.N.Y. 2003) ...............................................................10, 20

Hoeffner v. Orrick,
    61 A.D.3d 614 (1st Dep't 2009) ............................................................12

In re Bechtel v. Competitive Tech., Inc.,
    2005-SOX-00033, 2005 WL 4888997 (ALJ Oct. 5, 2005) ......................................24

In re Carter v. Champion Bus, Inc.,
    ARAB No. 05-076, 2006 WL 3246909 (ARAB Sept. 29, 2006) ............................23

In re Reed v. MCI, Inc.,
    2006-SOX-00071, 2006 WL 3246864 (ALJ June 20, 2006)..................................23

International Audiotext Network, Inc. v. AT&T Co.,
    62 F.3d 69 (2d Cir. 1995)................................................................................5

Jacobs v. Claire's Stores, Inc.,
    No. 08 Civ. 4481 (TPG), 2009 WL 2474108 (S.D.N.Y. Aug. 12, 2009) ...............14

Johnson v. Palma,
    931 F.2d 203 (2d Cir. 1991).......................................................................15

Jones v. City School Dist. of New Rochelle,
    No. 08 Civ. 01148 (DC), 2010 WL 996522 (S.D.N.Y. Mar. 19, 2010) ..................17

Junk v. Aon Corp.,
    No. 07 Civ. 4640 (LMM)(GWG), 2007 WL 4292034 (S.D.N.Y. 2007)........................5, 7, 10

Kant v. Columbia University,
    No. 08 Civ. 7476 (PGG), 2010 WL 807442 (S.D.N.Y. Mar. 9, 2010)...............................4, 12

Kessler v. Time Warner Cable,
    19 Misc.3d 1126A, 2008 N.Y. Slip Op 50860U (Sup. Ct. 2008) ...............................7

Kessler v. Westchester County Dep't of Soc. Servs.,
    461 F.3d 199 (2d Cir. 2006)..........................................................................19

Knafel v. Pepsi-Cola Bottlers, Inc.,
    899 F.2d 1473 (6th Cir. 1990) .......................................................................15

Lama Holding Co. v. Smith Barney Inc.,
    88 N.Y.2d 413 (1996)...................................................................................8

Leepson v. Allan Riley Co.,
    No. 04 Civ. 3720 (LTS) (AJ), 2006 WL 2135806 (S.D.N.Y. July 31, 2006)...........................7

Lessambo v. PricewaterhouseCoopers, L.P.,
   No. 08 Civ. 6272 (WHP), 2009 WL 2170179 (S.D.N.Y. June 29, 2009) ..............................18

Mobil Oil Corp. v. Joshi,
   202 A.D.2d 318 (1st Dep't 1994) .........................................................................................11

Monagle v. Scholastic, Inc.,
   No. 06 Civ. 14342 (GEL), 2007 WL 766282 (Mar. 9, 2007)...........................................13, 14

Moultrie v. VIP Health Care Servs.,
   No. 08-CV-0457 (DLI) (RML), 2009 WL 750219 (E.D.N.Y. Mar. 19, 2009) ......................18

N.Y. Univ. v. Continental Ins. Co.,
   87 N.Y.2d 308 (1995) ...........................................................................................................13

Pardy v. Gray,
   No. 07 Civ. 6324 (LAP), 2008 WL 2756331 (S.D.N.Y. July 15, 2008) ...................21, 23, 24

Patrowich v. Chem. Bank,
   63 N.Y.2d 541 (1984) ...........................................................................................................20

Popa v. PricewaterhouseCoopers LLP,
   No. 08 Civ. 8138 (LTS)(KNF), 2009 WL 2524625 (S.D.N.Y. Aug. 14, 2009).......................4

Portes v. Wyeth Pharm., Inc.,
   No. 06 Civ. 2689 (WHP), 2007 WL 2363356 (S.D.N.Y. Aug. 20, 2007).............................23

Robles v. Goddard Riverside Cmty. Ctr.,
   No. 08 Civ. 4856 (LTS)(JCF), 2009 WL 1704627 (S.D.N.Y. June 17, 2009).......................21

Rocanova v. Equitable Life Assur. Soc'y,
   83 N.Y.2d (1994))..................................................................................................................13

Rushing v. Nexpress Solutions, Inc.,
   No. 05 Civ. 6243 (CJS), 2009 WL 104199 (W.D.N.Y. Jan. 14, 2009) ................................12

Schanfield v. Sojitz Corp. of Am.,
   663 F. Supp. 305 (S.D.N.Y. 2009) .......................................................................................19

Selinger v. G F Health Prods.,
   23 Misc.3d 1113A, 2009 WL 1058587 (Sup. Ct. 2009)........................................................13

Sengillo v. Valeo Elec. Sys.,
   536 F. Supp. 2d 310 (W.D.N.Y. 2008) ...................................................................................6

Shapira v. Charles Schwab & Co.,
   225 F. Supp. 2d 414 (S.D.N.Y. 2002)...................................................................................12

Shea v. Hambros PLC,
    244 A.D.2d 39 (1st Dep't 1998) ........................................................................10

Smart Egg Pictures, S.A. v. New Line Cinema Corp.,
    213 A.D.2d 302 (1st Dep't 1995) ......................................................................13

St. Francis Coll. v. Al-Khazraji,
    481 U.S. 604 (1987)...........................................................................................15

Stamelman v. Fleishman-Hillard, Inc.,
    No. 02 Civ. 8318 (SAS), 2003 WL 21782645 (S.D.N.Y. July 31, 2003) .................8

Stevens v. N.Y.,
    2009 WL 4277234 (S.D.N.Y. Nov. 23, 2009)....................................................20

TVT Records v. Island Def Jam Music Group,
    412 F.3d 82 (2d Cir. 2005).................................................................................11

Valentine v. Standard & Poors,
    50 F. Supp. 2d 262 (S.D.N.Y. 1999)...................................................................16

Washington v. Kellwood Co.,
    No. 05 Civ. 10034 (DAB), 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) ..............9, 10, 11, 12

Weintraub v. Phillips, Nizer, Benjamin, Krim, & Ballon,
    172 A.D.2d 254 (1st Dep't 1991) ......................................................................11

Williams v. Time Warner Inc.,
    No. 09 Civ. 2962 (RJS), 2010 WL 846970 (S.D.N.Y. Mar. 3, 2010) ...............15, 16

Woodie v. Azteca Intern. Corp.,
    9 Misc.3d 1104A, 2005 NY Slip Op 51401U (Sup. Ct. 2005)......................9, 10, 12

**STATUTES & REGULATIONS**

18 U.S.C. § 1514A(b)(1)(a) ......................................................................................23

18 U.S.C. § 1514A(b)(2)(D) ......................................................................................23

N.Y. Labor Law § 198-c(2) ......................................................................................14

29 C.F.R. § 1980.104(b)(1)........................................................................................21

**RULES**

Fed. R. Civ. P. 8(a)(2) ................................................................................................3

Fed. R. Civ. P. 9(b) ..................................................................................................10

Defendants, The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"), Mitsubishi UFJ Financial Group, Inc. ("MUFG"), Hideyuki Toriumi ("Toriumi"), Timothy S. Tracey ("Tracey"), Randall C. Chafetz ("Chafetz") and Anthony Moon ("Moon") (collectively, "Defendants")[1], by and through their attorneys, Seyfarth Shaw LLP, respectfully submit this memorandum of law in support of their motion to dismiss plaintiff Christopher Cloke-Browne's ("Cloke-Browne" or "Plaintiff") Amended Complaint dated March 22, 2010 ( the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Cloke-Browne is a Caucasian male, who was born in Zimbabwe.  (Compl. ¶¶ 6, 65).[2] After meeting and/or corresponding with Defendants Toriumi, Hosomi and Moon, Cloke-Browne began employment at BTMU as a Senior Vice President in its Credit Portfolio Management Division for the Americas ("CPMDA") on or about March 2007.  (Id. ¶¶ 6-7, 33). In fact a new unit of CPMDA, Alternative Credit Risk Investments ("ACI") was created and Cloke-Browne was made the head of that unit.  As the head of ACI and an executive in CPMDA, Cloke-Browne was responsible for improving revenue and increasing the return on risk for BTMU.  (Id. ¶ 7).  Cloke-Browne, an at-will employee, admits that he was unable to perform any transactions (id. ¶¶ 48, 157), could not make ACI profitable and concedes that BTMU eliminated the entire ACI business unit in 2009 because it was not successful.  (Id. ¶ 55).

Despite this, Plaintiff has filed a sixteen count complaint, which suggests contradictory reasons for his termination.  On the one hand, he claims that he engaged in activities protected under the Sarbanes Oxley Act ("SOX") and that  three Caucasian BTMU executives (Tracey,

---

[1]   By letter dated April 28, 2010 Plaintiff's counsel has advised that he will be voluntarily dismissing all claims against Defendants Masahiro Hosomi and Kyota Omori.

[2]   For purposes of this motion only, Defendants assume the truth of the allegations of the Complaint.

Chafetz and Moon) retaliated against him by terminating his employment and denying him bonus and deferred compensation payments.   On the other hand, in his eight counts of discrimination and retaliation under Title VII, Section 1981, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL), Cloke-Browne asserted that he was terminated not by these three Caucasian executives, but by three other Japanese executives (Hosomi, Toriumi and Omori, two of whom are now being dropped from this action) who purportedly discriminated against him because of his race (Caucasian) and his national origin (African and not Japanese) and retaliated against him by refusing to pay him what he claims to be "contractually guaranteed bonuses/other sums" because he refused to sign a release.   (Id. ¶¶ 95-136).   Significantly, two of the Japanese managers he accused of discriminating against him, Hosomi and Toriumi, are the same managers who Plaintiff admits went to great lengths to recruit and hire him, knowing at the time they recruited him that he was not Japanese.  (Id. ¶¶ 33-35).

Cloke-Browne's state law claims for fraud and promissory estoppel fare no better.  The sole fraud alleged by Plaintiff is that promises were made to him to induce him to join BTMU. However, New York law does not recognize fraud predicated on future events, nor does it recognize promissory estoppel in the at-will employment context.

Cloke-Brown's contract claims are also meritless.  The offer letter on which he relies specifically states that if he is terminated before certain payments are due, he will receive the payments as severance, provided he signs a release.  His failure to comply with this condition precedent, to which he agreed before he was hired, defeats his breach of contract claim.

Plaintiff's claim for violation of the NY Labor Law has not been properly pled and in any event will not survive since the payments he seeks are severance covered by Section 198-c of the

law, a section that specifically excludes executives, such as Cloke-Browne, from its reach. Finally, Cloke-Brown has sued MUFG, but has not alleged a single violation committed by this entity or by its employees.  His bare assertion that BTMU was an agent of MUFG is insufficient, without more, to hold MUFG liable for BTMU's conduct.

## ARGUMENT

**I.**    **Plaintiff's Conclusory Complaint Cannot Survive a Motion to Dismiss**

      A.    <u>The Motion to Dismiss Standard</u>

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim *showing* that the pleader is entitled to relief."  (Emphasis added.)  In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court clarified this pleading obligation to require that the plaintiff allege sufficient facts to raise a right to relief above the *speculative* level; it is not enough to merely create a *suspicion* of a legally cognizable right of action.  <u>Twombly</u>, 550 U.S. at 555.  Thus, a complaint is properly dismissed for failure to state a claim where the plaintiff fails "to provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u> (citation omitted).  The complaint must meet the standard of plausibility.  <u>Id.</u> at 557.  Where a complaint fails to "possess enough heft to sho[w] that the pleader is entitled to relief," "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  <u>Id.</u> at 557-58[3] (citations omitted).

---

[3]  <u>Twombly</u> states that discovery is for finding "details" of a case, not for trying to create a case.  <u>Id.</u> at 560 n.6.

The Supreme Court further explained its plausibility standard in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-1950 (U.S. 2009).  The Court held that, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  <u>Id.</u> at 1949 (quotations omitted).

The Supreme Court distinguished between allegations of fact and law:  "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  <u>Id.</u> at 1949-50 (citation omitted).  The "pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  <u>Id.</u> (citations omitted).

Applying these standards, this Court has dismissed discrimination and retaliation claims, even from *pro se* plaintiffs (whose complaints are afforded a liberal reading) which were based on speculation and belief, <u>Popa v. PricewaterhouseCoopers LLP</u>, No. 08 Civ. 8138 (LTS)(KNF), 2009 WL 2524625 (S.D.N.Y. Aug. 14, 2009)[4] or failed to plead facts supporting an inference that an adverse employment action was based on a prohibited characteristic, <u>Kant v. Columbia</u>

---

[4]   Copies of unpublished cases cited herein are attached to the accompanying Compendium of Unreported Decisions Cited in Defendants' Memorandum of Law in Support of Their Motion to Dismiss.

University, No. 08 Civ. 7476 (PGG), 2010 WL 807442 (S.D.N.Y. Mar. 9, 2010); Gatto v. Jet

Blue Airways, No. 2009 Civ. 983 (LTS)(KNF), 2010 WL 125974 (S.D.N.Y. Jan. 13, 2010).  In

addressing a motion to dismiss the court is expected "to draw on its judicial experience and

common sense."  Geldzahler v. N.Y. Med. Coll., 663 F. Supp. 2d 379, 385 (S.D.N.Y. 2009).

        Where, as here, the "facts" are inadequate and inconsistent, and the complaint is laden

with conclusions of law which are plainly wrong, Plaintiff has not "nudged [his] claims across

the line from conceivable to plausible."  Twombly, 550 U.S. at 570, and has not demonstrated an

entitlement to relief under any of his sixteen contradictory claims.

## II.    Plaintiff Cannot Establish a Cause of Action for Breach of Contract

        Although Plaintiff acknowledges that his employment was at will (Compl. ¶ 157), he

nonetheless asserts a breach of contract claim against "Defendants."[5]  Under settled New York

law, however, an at-will employee, like Cloke-Browne, cannot maintain a cause of action for

breach of contract.  Geldzahler, 663 F. Supp. 2d at 388; Junk v. Aon Corp., No. 07 Civ. 4640

(LMM)(GWG), 2007 WL 4292034 (S.D.N.Y. 2007).

        In addition, there is no "employment agreement."  The document to which Plaintiff refers

in his complaint, but remarkably does not attach, is an employment offer made to him by BTMU.

A copy of this offer letter is attached as Exhibit B to the accompanying Declaration of Peter A.

Walker ("Walker Decl."), submitted herewith.[6]

---

[5]  Since his employment was with BTMU and none of the individual defendants are signatories
to the offer letter, Cloke-Browne's contract claim must be directed solely at BTMU.  To the
extent that Plaintiff purports to bring this claim against the individual defendants, it should also
be dismissed.

[6]  This Court may consider the offer letter even though Plaintiff did not attach it to his complaint.
In International Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) the Second
Circuit held that a court may consider, on a motion to dismiss, a document that is not attached to
a complaint, without converting the proceeding into one for summary judgment, where, as here,
the document on which plaintiff relies is integral to the complaint and plaintiff had possession or

The offer letter confirms that Cloke-Browne's employment with BTMU was at will. Although it is not a contract for a specific term, the offer letter which Plaintiff signed, on which Plaintiff relies, and to which he is bound, renders his breach of contract claim futile.  It states:

> If you are terminated from the Bank [BTMU] for unsatisfactory performance, position elimination, other reason or employment at will, you will nevertheless receive the referred to bonus distributions on the bonus distribution dates in 2007 for Fiscal Year 2006, in 2008 for Fiscal Year 2007, and in 2009 for Fiscal Year 2008, as the case may be, so long as you execute the Bank's standard release of claims; such payment will be considered severance.

Walker Decl., Ex. B.

Plaintiff's breach of contract count is solely that "the Company," BTMU, refused to make certain supposedly guaranteed incentive and deferred compensation payments to him. (Compl. ¶¶ 66-71, 72, 152, 153).   However, Plaintiff was advised at the outset of his employment and agreed that if he was terminated for "unsatisfactory performance, position elimination, other reason or employment at will," he would be eligible for this incentive and deferred compensation to be paid as severance **only** if he signed a release.   Plaintiff acknowledges that he did not perform as expected (id. ¶¶ 48, 60) and that his position and the entire unit, ACI, in which he worked, were eliminated.  (Id. ¶ 55).  He has admittedly refused to execute such a release (id. ¶¶ 71-73), the sole condition precedent to his receipt of this severance. Defendants did not, as Plaintiff claims, condition such payment on an "unlawful release of discrimination claims."  (Id. ¶¶ 102, 110, 119, 134).

## III.   Plaintiff's Claim for Breach of Implied Contract is Also Not Viable

In his fourteenth cause of action, Plaintiff claims that "Defendants'[7] Compliance Handbook and related materials contain multiple whistleblower provisions" which create an

---

knowledge of the document and relied upon it in bringing suit.  See also Sengillo v. Valeo Elec. Sys., 536 F. Supp. 2d 310 (W.D.N.Y. 2008), aff'd, 328 Fed. Appx. 39 (2d Cir. 2009).

[7]  Despite the fact that this claim refers to Defendants, it is addressed solely to BTMU.

"implied contract" between the Company and its employees, even if an employee is at-will.  (Id. ¶¶ 156-57).   Plaintiff alleges that he relied on these materials in deciding "not to retain employment with another financial firm or corporation."  (Id. ¶ 158).[8]   However, Plaintiff has failed to adequately identify and attach the policies on which he relies.  Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276 (DLC), 2004 WL 829158 (S.D.N.Y. Apr. 15, 2004) (motion to dismiss granted for failure to plead facts and to identify policy or agreement allegedly violated); Leepson v. Allan Riley Co., No. 04 Civ. 3720 (LTS) (AJ), 2006 WL 2135806, at *3 (S.D.N.Y. July 31, 2006) (breach of contract claim must include the provisions of the contract on which the claim is based); Junk, 2007 WL 4292034, at *5 (motion to dismiss granted; whistleblower provisions of Code of Business Conduct did not create a contract of employment).

In any event, under New York law "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." Kessler v. Time Warner Cable, 19 Misc.3d 1126A, 2008 N.Y. Slip Op 50860U, at *4 (Sup. Ct. 2008) (dismissing breach of contract claim); Bernhardt v. Tradition N. Am., 676 F. Supp. 2d 301 (S.D.N.Y. 2009) (dismissing claim of implied employment contract; policy statements providing that employees would be able to perform in accordance with prevailing laws, rules and regulations of the securities profession, did not overcome at-will status); Fraser v. Fid. Trust Co., Int'l, No. 04 Civ. 6958 (PAC), 2009 WL 2601389 (S.D.N.Y. Aug. 25, 2009) (Fiduciary Policy Manual does not create a contract of employment).  Here, Plaintiff's offer letter specifically incorporates BTMU's Employee Handbook, which not only provides that employment is at will, but explicitly states that the policies in the Handbook do not create a contract, express or implied.

---

[8]  The sole allegation with respect to his employment options pertains to his claim that he forewent an opportunity to work for Credit Suisse and others in 2006.  (Id. ¶¶ 30-31).

(Walker Decl., Ex. C at 6 ).  The Compliance Handbook likewise refers to the conduct identified

therein as guidelines, not a contract.  (Walker Decl., Ex. D. at 1, 3).

## IV.    Plaintiff Cannot Establish a Cause of Action for Fraudulent Inducement, Fraudulent Concealment or Promissory Estoppel

The essence of Plaintiff's fraudulent inducement, fraudulent concealment and promissory

estoppel claims, contained in the eleventh, twelfth and sixteen counts respectively, is that the

individual defendants made promises to Plaintiff with respect to what they "would" do and the

actions they "would" take, in order to induce him to join BTMU, but that they never intended to

follow through on those promises, all to Plaintiff's detriment.  However, the only individuals

who Plaintiff identifies as having made any "promises" to him, are Defendants Hosomi and more

ambiguously, Omori (Compl. ¶ 137 A-H), both of whom he will be dismissing from this action.

Furthermore, there is no allegation that individual defendants Toriumi, Moon, Tracey or Chafetz

made any representations or "promises" to Plaintiff.    Accordingly, Plaintiff's fraudulent

inducement, fraudulent concealment and promissory estoppel claims should be dismissed against

Defendants Toriumi, Moon, Tracey and Chafetz for this reason alone.  These claims should also

be dismissed against all Defendants for the reasons set forth below.

### A.    Fraudulent Inducement

To state a claim for fraudulent inducement, Plaintiff must allege that: (1) the defendants

knowingly misrepresented a material fact; (2) the misrepresentation was made for the purpose of

inducing him to rely on it; (3) he justifiably relied on that misrepresentation; and (4) he was

injured.  See Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996); Dooley v.

Metro. Jewish Health Sys., No. 02-CV-4640 (JG), 2003 WL 22171876 (E.D.N.Y. July 30, 2003).

New York Courts require that the alleged fraudulent misrepresentation be one of a then existing

fact.  Stamelman v. Fleishman-Hillard, Inc., No. 02 Civ. 8318 (SAS), 2003 WL 21782645

(S.D.N.Y. July 31, 2003).  Conclusory allegations that defendant did not intend to carry out a promise of future action will not suffice to state a cause of action.  Dooner v. Keefe, Bruyette & Woods, Inc., 157 F. Supp. 2d 265, 279 (S.D.N.Y. 2001).

Every one of Plaintiff's claims is framed as some form of future action.  Thus, Plaintiff claims inter alia, that he (1) "would be given the ability to modernize"; (2) his "business plans would be submitted . . . for approval"; (3) he "would have access" to funds; (4) he "would be properly paid"; and that (5) Defendants "would support and build [his] business"; "would provide [him] with" access to money; and "would support [his] ideas."  (Compl. ¶ 137 A-H).

Such statements are nothing more than "prophecy and prediction of something which it is merely hoped or expected will occur in the future" and as such, are not actionable.  Dooner, 157 F. Supp. 2d at 278.  In Dooner, the plaintiff claimed that the defendants committed fraud when they advised her that the IPO was a "done deal," a "sure thing," and that she "would make a lot of money" in order to induce her to remain in defendants' employ.  The Court found that these statements were representations based on unforeseen circumstances that were too fraught with prophesy, speculation and chance to support a claim for fraud.  Id.

In Woodie v. Azteca Intern. Corp., 9 Misc.3d 1104A, 2005 NY Slip Op 51401U, at *7 (Sup. Ct. 2005), the plaintiff claimed that defendant made the following misrepresentations to induce his hire:  (1) he would give plaintiff the "resources and support" he needed to launch a network; (2) he would  plaintiff to hire a sales force; and (3) he would plaintiff the responsibility to sell to markets in different states.  The Court did not find any of these statements to be of "then-present" facts and dismissed the fraud claims.  Id.  See Washington v. Kellwood Co., No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *4-5 (S.D.N.Y. Mar. 24, 2009) (representation that defendants would invest a substantial amount of capital does not amount to fraud.)

Nor is Plaintiff's unadorned statement that he has reasonably relied on representations regarding his business opportunities, enough.  (Compl. ¶ 142).  Claims of fraudulent inducement made to an at-will employee such as Plaintiff are not cognizable, since reliance on representations of future intentions is unreasonable as a matter of law.  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 186-87 (2d Cir. 2004); Brady v. Calyon Sec. (USA) Inc., 406 F. Supp. 2d 307 (S.D.N.Y. 2005) (collecting cases).

Even if Plaintiff were not an at-will employee, he could not claim justifiable reliance since he was admittedly a sophisticated businessman.  (Compl. ¶¶ 7, 30, 31).  See Woodie, 2005 NY Slip Op 51401U, at *7 (dismissing fraud claim since plaintiff was an experienced businessman with intimate knowledge of his industry); Shea v. Hambros PLC, 244 A.D.2d 39, 47 (1st Dep't 1998) (plaintiff could "hardly claim with any credibility that he, a savvy businessman, entered into the resulting agreements lulled by faith or trust in the parties across the bargaining table, or that he unwittingly gave up some valued right in the bargain"); Junk, 2007 WL 4292034, at *7 (same).  Here, Plaintiff signed an offer letter, expressly stating that any "pre-employment verbal agreements are superseded by the policies contained in the Employee Handbook."  As a result, he cannot claim reasonable reliance on any oral representations.  Id.

Finally, Fed. R. Civ. P. 9(b) requires that allegations of fraud be stated with particularity. In addition to the statements which Plaintiff claims are fraudulent, he must identify the speaker, state where and when the statements were made and explain why the statements were fraudulent. Hirsch v. Columbia Univ., 293 F. Supp. 372, 381 (S.D.N.Y. 2003); Washington, 2009 WL 855652, at *5.  Plaintiff only identifies the speakers of two of the alleged fraudulent statements. He has not identified the speakers of the remaining six statements, nor has he stated where or when any of the statements were made or why they were fraudulent.

B.    Fraudulent Concealment

Plaintiff's fraudulent concealment claim is equally untenable.  A claim for fraudulent concealment under New York law is similar to a claim for fraudulent inducement except that it requires a plaintiff to plead that a defendant had a duty to disclose information which he omitted. Washington, 2009 WL 855652, at *4.  The elements of fraudulent concealment are (1) a failure to discharge a duty to disclose; (2) an intention to defraud; (3) reliance; and (4) damage.  TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 90-91 (2d Cir. 2005).

A duty to disclose only arises where there is a fiduciary relationship between the parties, one party possesses superior knowledge not readily available to the other party and on which that party relies, or there is a need to clarify a partial or ambiguous statement.  Mobil Oil Corp. v. Joshi, 202 A.D.2d 318 (1st Dep't 1994).  Here, Plaintiff's fraudulent concealment claim is essentially his fraudulent inducement claim with a twist.  He alleges that the individual defendants had a duty to disclose their superior and "material knowledge and information regarding the internal business plans of [the Company] that they fraudulently concealed from" him, including that they had no intent to support him.  (Compl. ¶¶ 145-48).

Plaintiff cannot sustain this claim for several reasons.  First, like his fraudulent inducement claim, Plaintiff's allegations of fraud pertain to future plans or events, not present information.  A failure to disclose an intention to breach is not actionable fraudulent concealment.  TVT Records, 412 F.3d 82, 90; Graves v. Deutsche Bank Sec. Inc., No. 07 Civ. 5471 (BSJ), 2010 WL 997178, at *4-5 (S.D.N.Y. Mar. 18, 2010) (fraudulent concealment claim that supervisors intended to fire plaintiff but induced him to continue working in reliance on receiving his bonus, dismissed).

Second, it is well settled under New York law that an employer owes no fiduciary duty to an at-will employee.  See Weintraub v. Phillips, Nizer, Benjamin, Krim, & Ballon, 172 A.D.2d

11

254, 254 (1st Dep't 1991); <u>Hoeffner v. Orrick</u>, 61 A.D.3d 614 (1st Dep't 2009); <u>Rushing v.</u>
<u>Nexpress Solutions, Inc.</u>, No. 05 Civ. 6243 (CJS), 2009 WL 104199, at *5 (W.D.N.Y. Jan. 14,
2009) (citations omitted).

Third, as even Plaintiff concedes, the parties engaged in an arms length business
transaction.  (Compl. ¶ 147).  He has not pled facts to demonstrate reliance on Defendants'
supposed representations.  Merely repeating the elements of the cause of action falls woefully
short of satisfying the specificity requirements of Rule 9(b).  <u>Graves</u>, 2010 WL 997178, at *4-5;
<u>Washington</u>, 2009 WL 855652, at *2.  Like his fraudulent inducement claim, Plaintiff has failed
to plead his fraudulent concealment claim with the particularity required by Fed. R. Civ. P. 9(b).

C.    <u>Promissory Estoppel</u>

It is well settled under New York law that the doctrine of promissory estoppel does not
apply in the employment context.  Specifically, an employee cannot sue an employer on
promissory estoppel grounds, alleging that the employer has reneged on employment promises.
<u>Kant</u>, 2010 WL 807442, at *5; <u>Bessemer Trust Co., N.A. v. Branin</u>, 498 F. Supp. 2d 632
(S.D.N.Y. 2007): <u>Shapira v. Charles Schwab & Co.</u>, 225 F. Supp. 2d 414, 419 (S.D.N.Y. 2002)

D.    Plaintiff's Fraud Claims are Duplicative of His Contract Claims
      and Should be Dismissed

In situations where, as here, a plaintiff raises both a breach of contract and fraud claim, "a
plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the
contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the
contract; or (iii) seek special damages that are caused by the misrepresentation and
unrecoverable as contract damages." <u>Dooley</u>, 2003 WL 22171876, at *10; <u>see</u> <u>also</u> <u>Hoeffner</u>, 61
A.D.3d at 615 (dismissing promissory estoppel claim as duplicate of breach of contract claim);
<u>Hawthorne Group, LLC v. RRE Ventures</u>, 7 A.D.3d 320, 323-324 (1st Dep't 2004); <u>Woodie</u>,

2005 NY Slip Op 51401U, at *7 (dismissing fraudulent inducement claim as an end run around failed breach of contract claim); N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 318 (1995) ("General allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support the [fraud] claim.") (citing Rocanova v. Equitable Life Assur. Soc'y, 83 N.Y.2d, 603, 614 (1994)); see also Smart Egg Pictures, S.A. v. New Line Cinema Corp., 213 A.D.2d 302, 303 (1st Dep't 1995) ("A contract claim cannot be converted into a fraud claim merely by the expedient of alleging that a contracting party never intended to perform its promise."). Selinger v. G F Health Prods., 23 Misc.3d 1113A, 2009 WL 1058587, at *4 (Sup. Ct. 2009) ("When a plaintiff suing for breach of contract also alleges that a fraud was committed because the defendant harbored an undisclosed intention from the outset to never comply with an alleged agreement, the fraud claim is subject to dismissal as merely duplicative of the breach of contract causes of action.").

**V.     Plaintiff's Claim for Violation of the New York Labor Law Should be Dismissed**

In his fifteenth cause of action, Plaintiff alleges that "the Company" -- BTMU -- owes him earned wages of $733,000 for his performance in 2008 and that its failure to pay him wages is a violation of Sections 190 *et. seq.* of the N.Y. Labor Law.  (Compl. ¶¶ 164-166).  Plaintiff's claim fails for several reasons.  First, Plaintiff's reference to N.Y. Labor Law section 190 *et seq.* is insufficient to provide Defendants with knowledge of his claims.  Indeed, Defendants should not have to guess as to which provisions of Article 6 of the Labor Law Plaintiff refers.  Monagle v. Scholastic, Inc., No. 06 Civ. 14342 (GEL), 2007 WL 766282 (Mar. 9, 2007).

Second, under the clear terms of Plaintiff's offer letter, the money he seeks is not earned wages.  Plaintiff's offer letter of November 2006, identifies $400,000 as bonus money for 2008, to be paid during the second quarter of 2009 and $333,000 to be paid in May 2009 as a payment to be made "in compensation for forfeiture of your current employer's deferred compensation

payments." (Walker Decl., Ex. B). However, both of these payments were "subject to [Cloke-Browne's] continued active employment." Id. There is no allegation that Plaintiff was actively employed by the time these payments were due.

Nevertheless, the offer letter also provides that if Plaintiff is terminated other than for cause before these sums are due, they would be deemed severance, which Plaintiff would receive upon execution of a release. Since Plaintiff was terminated before the $733,000 was due and has not complied with the offer letter's release requirement, these sums have not been earned.

Finally, severance is defined in N.Y. Labor Law §198-c(2) as a benefit and wage supplement. N.Y. Labor Law § 198-c(2); see also Monagle, 2007 WL 766282, at *2; Jacobs v. Claire's Stores, Inc., No. 08 Civ. 4481 (TPG), 2009 WL 2474108 (S.D.N.Y. Aug. 12, 2009). Section 198-c(2) of the law excludes executives, such as Cloke-Browne, a Senior Vice President, who earned in excess of six hundred dollars a week, from its protections. (Compl. ¶ 7).[9] Monagle, 2007 WL 766282, at *2; Jacobs, 2009 WL 2474108, at *2.

## VI.   Plaintiff's Section 1981, Title VII, NYSHRL and NYCHRL Claims of Discrimination Based on Race and National Origin Should be Dismissed

Plaintiff's second, fourth, sixth and ninth causes of action claim that BTMU, MUFG, and Defendants Toriumi, Hosomi and Omori discriminated against him.[10]  Specifically, Plaintiff alleges that he was denied employment opportunities and terminated because of his race (Caucasian) and national origin (not Japanese), in violation of Section 1981, Title VII, the NYSHRL and the NYCHRL.[11]  Since the analysis under these statutes parallels each other,

---

[9]  Under his offer letter, Plaintiff's salary alone was two hundred thousand dollars per year.

[10]  As noted, Plaintiff has indicated that he is voluntarily dismissing Hosomi and Omori from this action.

[11]  To the extent that Plaintiff is seeking to recover for discrimination on the basis of national origin under Section 1981, his claim must be dismissed because Section 1981 concerns itself only with race discrimination, and does not prohibit discrimination on the basis of national

discrimination claims under these statutes will be addressed together.  Cruz v. Coach Stores, Inc., 202 F.3d 560, 560 n.1 (2d Cir. 2000) (consideration of claims under state and city human rights laws parallels Title VII); Hargett v. Nat'l Westminster Bank, USA, 78 F.3d 836, 838-39 (2d Cir. 1996) (Title VII analysis applies to Section 1981 claim).

To allege discrimination, a plaintiff must show (1) membership in a protected class; (2) that he was qualified for the position held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  Gatto, 2010 WL 125974, at *1.  The "*sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be *because of* the employee's protected characteristic."  Williams v. Time Warner Inc., No. 09 Civ. 2962 (RJS), 2010 WL 846970, at *3 (S.D.N.Y. Mar. 3, 2010) (quotations omitted).

At the outset, Plaintiff's Title VII claims against MUFG should be dismissed.  There is not one factual allegation of actual discrimination by MUFG.  Moreover, Plaintiff did not follow procedural requirements prior to filing a Title VII claim against MUFG because Plaintiff failed to name MUFG as a respondent in Plaintiff's EEOC charge and it was not named in the Right to Sue letter.  Johnson v. Palma, 931 F.2d 203, 210 (2d Cir. 1991); Knafel v. Pepsi-Cola Bottlers, Inc., 899 F.2d 1473, 1480-81 (6th Cir. 1990) (affirming dismissal of Title VII claim against corporate parent because it had not been named as a respondent in the EEOC charge).  Nor can Plaintiff bring himself within any exception to this rule since he was represented by counsel at the time he filed his EEOC charge.  Johnson, 931 F.2d at 209-10; Darden v. DaimlerChrysler N. Am., 191 F. Supp. 2d 382 (S.D.N.Y. 2002).

---

origin.  Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998) (citing St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987)).

With respect to his discrimination claims as a whole, Plaintiff cannot satisfy the causality requirement nor does he allege that his job performance was satisfactory.  In fact, Plaintiff's pleading contains allegations to the contrary.  Specifically, Plaintiff admits that he was hired as the Senior Vice President for BTMU's CPMDA and that he was to expand "CPMDA by improving revenue as well as increasing the return on risk for BTMU."  (Compl. ¶¶ 6-7). Plaintiff also admits that he was unable to perform any transactions in over a year (Compl. ¶ 48) and could not make this business profitable.  (Compl. ¶ 55.)

Nor can Plaintiff demonstrate that any action taken against him was due to discrimination.  The gravamen of his discrimination claims against BTMU, MUFG and Toriumi, is that (1) he was not given the same opportunities as individuals of Japanese ancestry who were less qualified than he (Compl. ¶¶ 59, 61); (2) that Hosomi and Toriumi (both of Japanese descent) gave him a lower performance rating than he deserved (id. ¶¶ 61-62) [12] and (3) that a "staff reduction" targeted Caucasians and did not include individuals of Japanese ancestry.  (Id. ¶ 63).  Notably, despite his claims of discrimination, Plaintiff did not avail himself of BTMU's EEO Policy or Complaint Procedure (Walker Decl., Ex. C at 11-14) at any time during his employment.  It was only after he was terminated that he alleged discrimination.

Plaintiff fails to (1) allege any facts which would demonstrate that the opportunities supposedly given to individuals of Japanese ancestry were opportunities within the realm of his abilities or responsibilities; (2) identify any similarly situated Japanese employees who received a higher rating from Hosomi and Toriumi than he did; or (3) identify any similarly situated Japanese employee who was treated better than he was treated.

---

[12]   Plaintiff makes no claim that a two is a negative evaluation.  However, even if he did, negative evaluations without repercussions are not adverse employment actions.  Gatto, 2010 WL 125974, at *2 (citing Valentine v. Standard & Poors, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999)), aff'd, 205 F.3d 1327 (2d Cir. 2000).

Although Cloke Browne alleges that Daisuke Sugo, a Japanese employee and subordinate to him was retained and not he (Compl. ¶ 64), there is no allegation that Sugo was an employee in the ACI group which was completely eliminated. (Id. ¶ 55). Nor can Plaintiff logically claim that any opportunities were given to Sugo and not to him, in light of his admission that he and Sugo worked on many of the same projects and shared a similar work load. (Id. ¶ 64).

The only other employee who Plaintiff identifies as being treated more favorably than he was treated is Martin Palmeri who, like Plaintiff, is Caucasian and was given a promotion that was not given to Plaintiff. (Id. ¶ 81). Ironically, Plaintiff asserts that Chafetz, also Caucasian, made the decision to promote Palmeri, yet he does not allege discrimination against him.

Finally, with respect to his termination, Plaintiff alleges that a staff reduction targeted Caucasians. (Id. ¶ 63). Plaintiff has failed to identify who made the decision or who was part of this reduction, but acknowledges that the ACI business unit, which he headed, did not make a profit and was eliminated in its entirety. (Id. ¶ 55). Enos, who had been hired at the same time as Plaintiff, for the same business unit as Plaintiff and was referenced in Plaintiff's offer letter, was also part of this reduction which eliminated the ACI business unit.

In sum, while Plaintiff's complaint is lengthy, he has failed to articulate sufficient facts to support his vague and conclusory allegations of discrimination against either the corporate entities or Defendant Toriumi.[13] Other than the fact that he did not receive the highest ranking from Defendants Hosomi and Toriumi, there are no specific allegations that they actively participated in any discrimination. Indeed, many of Plaintiff's complaints are no more than

---

[13] Significantly, he makes no allegations whatsoever of any discriminatory comments. And while such comments are not necessary to sustain a case of discrimination, the lack of derogatory comments is one factor in finding the absence of discriminatory intent. Jones v. City School Dist. of New Rochelle, No. 08 Civ. 01148 (DC), 2010 WL 996522, at *7 (S.D.N.Y. Mar. 19, 2010); Francis v. Pactiv Corp., No. CV 04-0417 (WDW), 2007 WL 879672, at *13 (E.D.N.Y. Mar. 21, 2007).

workplace difficulties and involve disputes that are plainly not actionable under the discrimination statutes.  His conclusions regarding discrimination are nothing more than gut instinct which does not support an inference of discrimination.  Ercole v. U.S. Dep't of Transp., No. 07-CV-2049 (JFB) (AKT), 2008 WL 4190799, at *7 (E.D.N.Y. Sept. 10, 2008) (allegation of discrimination based on skin color was insufficient to survive a motion to dismiss); Lessambo v. PricewaterhouseCoopers, L.P., No. 08 Civ. 6272 (WHP), 2009 WL 2170179 (S.D.N.Y. June 29, 2009) (Section 1981 claim based solely on conclusory allegations that supervisors were motivated by race, dismissed); Gueye v. United Fed. of Teachers, No. 00 Civ. 1766 (RMB), 2003 WL 21783124 (S.D.N.Y. Aug. 1, 2003) (pleading requirements not satisfied where plaintiff alleged simply that adverse actions were motivated by discriminatory animus); Moultrie v. VIP Health Care Servs., No. 08-CV-0457 (DLI) (RML), 2009 WL 750219 (E.D.N.Y. Mar. 19, 2009) (motion to dismiss race and national origin claims granted where plaintiff alleged only that on a single occasion, her supervisor, a Jamaican, replaced her as an aid to a particular client, with another Jamaican employee); Coleman v. BrokersXpress, LLC, No. 08 Civ. 5085 (SAS), 2008 WL 4778675, at *2 (S.D.N.Y. Oct. 31, 2008) (dismissing religious discrimination claim based on generic allegations that plaintiff was Jewish and was terminated because of his religion). Accordingly, Plaintiff's allegations of race and national origin discrimination are nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" found insufficient by the U.S. Supreme Court in Iqbal and should be dismissed as lacking any factual predicate.

**VII.    Plaintiff's Claims of Retaliation Under Section 1981, Title VII, the NYSHRL and the NYCHRL Should be Dismissed.**

To establish a retaliation claim under the discrimination laws, Plaintiff must allege: (1) participation in an activity protected by Title VII; (2) the employer's awareness of plaintiff's participation in the activity; (3) an employment action disadvantaging the plaintiff; and (4) a

causal connection between the protected activity and the adverse employment action.  Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006); Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 305, 341 (S.D.N.Y. 2009) (the "term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination.")

Here, Plaintiff's complaint does not contain any allegation that he engaged in any activity protected under the discrimination laws.  During his employment, he did not file an agency complaint, a lawsuit, an internal complaint regarding discrimination or engage in any other type of protected activity.  Amofa v. Bronx-Lebanon Hosp. Ctr., No. 05 Civ. 9230 (SHS), 2006 WL 3316278 (S.D.N.Y. Nov. 13, 2006) (motion to dismiss Title VII retaliation claim granted where plaintiff did not complain about a type of discrimination that Title VII forbids; to the contrary, he claimed that denying him a bonus and withholding his paycheck was unfair).  So too here.  There is no allegation that Plaintiff's compensation was withheld because of his race or national origin.

Plaintiff only claims that Defendants retaliated against him because they failed to pay him guaranteed sums and then, conditioned payment of these sums on his signing a release of claims.  (Compl. ¶¶ 102, 110, 119, 134).  This claim fails for the same reasons as do his contract and fraud claims.  Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP, 491 F. Supp. 2d 386, 399 (S.D.N.Y. 2007) ("Of course, Plaintiff was well within her rights to refuse to sign such a waiver, but the Firm was also within its rights to ask for one.  Defendant's actions here cannot be considered retaliatory simply because it required a release as a precondition for severance."), aff'd, 323 Fed. Appx. 59 (2d Cir. 2009).  This is particularly true here since the release requirement was contained in the offer letter which was executed before Plaintiff could have engaged in any protected activity.  Further, the offer letter is consistent with BTMU's

severance policy, incorporated into the letter, which specifically requires a release in order to receive severance.  (Walker Decl., Ex. C at 132).

## VIII.   Plaintiff Cannot Establish Aiding or Abetting Liability Against the Individual Defendants

Plaintiff seeks to hold Defendant Toriumi personally liable under the NYSHRL and the NYCHRL.  (Compl. ¶¶ 106, 114, 123-124).[14]  However, Plaintiff's failure to adequately plead any discrimination claims dooms his individual liability claim as well.  See Falchenberg v. N.Y. State Dep't of Educ., 338 Fed. Appx. 11, 14 (2d Cir. June 8, 2009) ("[A]iding and abetting is only a viable theory where an underlying violation has taken place."), cert. denied, 130 S. Ct. 1059 (U.S. 2010); Falbaum v. Pomerantz, 19 Fed. Appx. 10, 15 (2d Cir. 2001) (where there is no discrimination by employer, "there is no predicate for imposing liability on the supervisors under an aiding and abetting theory"); Forrest v. Jewish Guild for the Blind, 309 A.D.2d 546 (1st Dep't 2003) (where underlying claim of discrimination fails, aiding and abetting claim cannot survive).

Even if there was discrimination, which Defendants deny, for an individual to be liable under the state and city human rights laws, he must have (a) an ownership interest in the employer, or be the employer, (b) the power to make, rather than carry out, personnel decisions or (c) actually participate in the conduct giving rise to the discrimination claim.  Feingold v. N.Y., 366 F.3d 138, 158 (2d Cir. 2004) (citing Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542 (1984)); see also Stevens v. N.Y., 2009 WL 4277234 (S.D.N.Y. Nov. 23, 2009); Hargett, 552 F. Supp. 2d 393 (S.D.N.Y. 2008).   In other words, in order to find individual liability, the individuals must have actively participated in the discrimination.  Hirsch, 293 F. Supp. 2d at 378.

---

[14]  There is no allegation that Defendants Tracey, Moon or Chafetz are liable under the NYSHRL or the NYCHRL.

Here, there is no allegation that any of the individual defendants have an ownership interest in BTMU or MUFG.  And while Plaintiff claims that these individuals generally supervised him and had the ability to hire and fire employees, there is absolutely no allegation that they engaged in any specific discriminatory conduct.  Conclusory allegations, such as those against Toriumi are insufficient to sustain a claim of aider and abettor liability.  <u>Robles v. Goddard Riverside Cmty. Ctr.</u>, No. 08 Civ. 4856 (LTS)(JCF), 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009).

## IX.   <u>Plaintiff's SOX Claim Should be Dismissed</u>

To state a claim under Section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX"), Cloke-Browne must assert that: (1) he engaged in an activity protected by SOX; (2) his employer, BTMU, either actually or constructively, knew or suspected that he engaged in protected activity; (3) he suffered an unfavorable employment action; and (4) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action." <u>Gattegno v. Admin. Review Bd.</u>, 353 Fed. Appx. 498, 500 (2d Cir. 2009) (citing 29 C.F.R. § 1980.104(b)(1)); <u>see also</u> <u>Pardy v. Gray</u>, No. 07 Civ. 6324 (LAP), 2008 WL 2756331, at *5 (S.D.N.Y. July 15, 2008).  The protected activity "must implicate the substantive law protected in [SOX] definitively and specifically." <u>Pardy</u>, 2008 WL 2756331, at *5 (citing <u>Fraser v. Fid. Trust Co. Int'l</u>, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006)).

Unlike his discrimination claims where he asserts that individuals of Japanese ancestry were violating the law, Plaintiff's SOX claim is that Caucasian executives retaliated against him. Putting aside these contradictory claims, Plaintiff has not properly alleged a SOX claim against BTMU, MUFG and individual defendants Tracey, Chafetz and Moon because he has not alleged that he engaged in any activity protected under SOX.

Plaintiff's claim against MUFG fails for yet another reason.  MUFG is not Plaintiff's employer (Compl. ¶ 6) and Plaintiff's bare assertion that BTMU "has functioned at all relevant times as an agent of MUFG" does not suffice to plead a claim against MUFG.  (Id. ¶ 12).  Here, Plaintiff does not allege any facts which would support a claim that BTMU acts as MUFG's agent with regard to employment decisions, and in particular, those employment decisions made with respect to Plaintiff.  See Brady, 406 F. Supp. 2d at 318 n.6 (agency may only be established where "publicly traded company directs and controls the employment decisions.")  The individuals whom Plaintiff claims retaliated against him under SOX, Tracey, Moon, and Chafetz, are not alleged to have any connection to MUFG.  (Compl. ¶¶ 17-19).

With respect to his SOX claims against the other Defendants, Plaintiff alleges only that he warned unnamed defendants and senior management of BTMU about his serious belief that MUFG might be violating the securities laws (Compl. ¶ 75); he reported to unnamed individuals that BTMU/MUFG were not properly calculating or reporting risk levels (id. ¶ 76); he informed Moon, Hosomi and Toriumi (of whom, the latter two are not alleged to have violated SOX), that strong deal screening was necessary (id. ¶ 77); he attended numerous meetings and expressed concern over BTMU/MUFG's business practices and calculation of exposure in the U.S.  (Id. ¶ 78); Tracey allegedly did not report Plaintiff's concerns about the AIG risk to higher management, downplayed Plaintiff's views because they contradicted his own, asked a BTMU attorney to ask Plaintiff to refrain from circulating emails about AIG and excluded him from meetings (id. ¶¶ 79, 84, 85); and Chafetz purportedly appointed Palmeri to a position, rather than Plaintiff ((id. ¶ 81) and told employees not to work with Plaintiff.  (Id. ¶ 83).  Despite his SOX allegations, Plaintiff did not utilize BTMU's Compliance Hotline which prohibits retaliation against individuals making complaints or complete an Suspicious Activity Report.  (Walker

Decl., Ex. D at 8-9).  He did not avail himself of BTMU's Open Door Policy or Compliance Procedures as contained in the Handbook.  (Walker Decl., Ex. C at 22, 102-106).

Not one of Plaintiff's complaints or communications sufficiently placed these Defendants on notice that he was engaging in a protected activity under SOX, or that he was reporting potential SOX violations.  While Plaintiff's complaint states that he "believed" one of these alleged activities was "defrauding shareholders," the complaint does not allege that he used that language in his communications to management.  (Compl. ¶ 76).  Here, Plaintiff's claims are devoid of "'any allegations of conduct that would alert [BTMU] that [Cloke-Browne] believed the company was violating any federal rule or law related to fraud against shareholders,'" therefore his complaints are not covered by SOX.  Pardy, 2008 WL 2756331, at *5 (citing Fraser, 417 F. Supp. 2d at 322); Portes v. Wyeth Pharm., Inc., No. 06 Civ. 2689 (WHP), 2007 WL 2363356, at *3 (S.D.N.Y. Aug. 20, 2007) (dismissing SOX claim where "[p]laintiff does not allege that he explicitly referred to fraud, shareholders, securities, statements to the SEC, or SOX in his disclosures to superiors at [his company]"); In re Reed v. MCI, Inc., 2006-SOX-00071, 2006 WL 3246864, at *3 (ALJ June 20, 2006) (dismissing SOX claim, allegations of defrauding shareholders do not concern an underlying SOX violation; "Retaliation against an employee is a violation of SOX only if it is in response to the employee's reasonable belief of fraud related to shareholders or a violation of one of the statutes enumerated in SOX.").

Further, many of the "employment actions" about which Plaintiff complains are time barred. "A plaintiff alleging a violation of § 1514A(a)(1) must file a complaint with the Secretary of Labor not later than 90 days after the date of the alleged violation." Portes, 2007 WL 2363356, at *3 (citing 18 U.S.C. § 1514A(b)(1)(a) & 18 U.S.C. § 1514A(b)(2)(D)); see also In re Carter v. Champion Bus, Inc., ARAB No. 05-076, 2006 WL 3246909, at *2 (ARAB Sept. 29,

2006) (dismissing SOX claim as a matter of law where plaintiff failed to file a SOX complaint within 90 days of the alleged retaliation, "i.e. when the discriminatory act has been both made and communicated to the complainant").  Here, Plaintiff filed his SOX complaint on June 26, 2009 (Compl. ¶ 27), but most of the actions about which he complains occurred more than 90 days before this date.  Thus, Plaintiff's allegation that Chafetz retaliated against him in October 2008 by promoting Palmeri is time-barred (id. ¶ 81) as are his claims that Chafetz told employees to cease working with Plaintiff (id. ¶ 83); that Tracey sought to "silence" Cloke-Browne from circulating emails (id. ¶ 84) and excluded him from meetings (id. ¶ 85); and that Moon was involved in the "aforementioned actions by Mr. Tracey and Mr. Chafetz." (id. ¶ 86).

Plaintiff's own allegations undermine that portion of his SOX claim relating to his termination and compensation.  (Id. ¶ 88, 91).  Here, Plaintiff admits that he was hired to perform a job and, in the end, did not close one deal.  (Id. ¶¶ 36, 48).  He acknowledges that he was terminated in a reduction in force of his entire unit because it was unsuccessful.  (Id. ¶ 55).[15] Position eliminations based upon budgetary reasons are legitimate business reasons and not violations of SOX.   Harp v. Charter Commc'ns, Inc., 558 F.3d 722, 726 (7th Cir. 2009) (dismissing SOX claims where employee's position was eliminated in a reduction in force). Similarly, poor performance can be a legitimate business reason unrelated to an employee's "protected activity."   See, e.g., Pardy, 2008 WL 2756331, at *6 (poor performance and co-worker complaints revealed that employee would have been terminated absent alleged protected activity); In re Bechtel v. Competitive Tech., Inc., 2005-SOX-00033, 2005 WL 4888997, at *40

---

[15]  Most significantly, there is no allegation that individual defendants Tracey, Chafetz or Moon played any role in the decision to eliminate Plaintiff's entire department.  Nor is there any allegation that these individual defendants required Plaintiff to sign a release to receive his severance, as Plaintiff had agreed to in his offer letter.

(ALJ Oct. 5, 2005) (dismissing claim where decision to discharge employee was a business decision due to his failure to produce the short-term revenue the company needed).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss the Complaint in its entirety with prejudice and grant such other relief as the Court may deem just and proper, including the costs and fees of making this motion.

Dated:  New York, New York
　　　　April 30, 2010

Respectfully submitted,

SEYFARTH SHAW LLP


By: s/ Peter A. Walker
　　　Peter A. Walker
　　　Lori M. Meyers
　　　620 Eighth Avenue
　　　New York, New York 10018
　　　(212) 218-5500

Attorneys for Defendant The Bank of Tokyo-
Mitsubishi UFJ, Ltd; Mitsubishi UFJ Financial
Group, Inc.; Messrs. Toriumi, Tracey; Chafetz and
Moon
