**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
CHRISTOPHER CLOKE-BROWNE   :
              :
      Plaintiff, :
              :  Civil Action No. 10-CIV-2249 (LTS)
    v.       :
              :
BANK OF TOKYO-MITSUBISHI UFJ, LTD., :
MITSUBISHI UFJ FINANCIAL GROUP, :
HIDEYUKI TORIUMI, MASAHIRO HOSOMI, :
KYOTA OMORI, TIMOTHY S. TRACEY, :
RANDALL C. CHAFETZ, and ANTHONY :
MOON in their official and individual capacities, :
              :
      Defendants. :
-----------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS' MOTION TO**
**DISMISS PLAINTIFF'S AMENDED COMPLAINT**

THOMPSON WIGDOR & GILLY LLP
Douglas H. Wigdor
David E. Gottlieb
85 Fifth Avenue
New York, New York 10003
Tel: (212) 257-6800
Fax: (212) 257-6845


*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 1

ARGUMENT ......................................................................................................................... 4

   I.  APPLICABLE LEGAL STANDARD ON A MOTION TO DISMISS ........................... 4

  II.  PLAINTIFF HAS PROPERLY PLED A SARBANES-OXLEY CLAIM ........................ 5

      A.  Plaintiff Has Properly Pled A Cause Of Action For Whistleblower
          Retaliation Under Sarbanes-Oxley ................................................................ 5

      B.  Defendant MUFG May Be Held Liable As An Integrated Employer ................... 8

 III.  PLAINTIFF HAS PROPERLY PLED CAUSES OF ACTION FOR BREACH
       OF EXPRESS AND IMPLIED CONTRACT ................................................................. 8

      A.  Plaintiff Has Properly Pled A Cause Of Action For Whistleblower
          Retaliation Under Sarbanes-Oxley ................................................................ 8

      B.  Plaintiff Has Properly Pled A Cause Of Action For Breach Of Implied
          Contract ...................................................................................................... 12

 IV.  PLAINTIFF HAS PROPERLY PLED CAUSES OF ACTION FOR
       FRAUDULENT INDUCEMENT, FRAUDULENT CONCEALMENT OR
       PROMISSORY ESTOPPEL ........................................................................................ 14

      A.  Plaintiff Has Properly Pled A Cause Of Action For Fraudulent Inducement ........ 14

      B.  Fraudulent Concealment ............................................................................... 15

      C.  Plaintiff's Fraud Claims Are Not Duplicative Of His Breach Of Contract
          Claims ........................................................................................................ 17

  V.  PLAINTIFF HAS PROPERLY PLED VIOLATIONS OF NEW YORK LABOR
       LAW ........................................................................................................................... 18

 VI.  PLAINTIFF HAS PROPERLY PLED VIOLATIONS OF SECTION 1981,
       TITLE VII, NYSHRL AND NYCHRL ....................................................................... 20

A. Plaintiff Has Adequately Alleged Unlawful Discriminatory Employment Practices ...................................................................................................21

B. Plaintiff's Title VII Claims As to Defendant MUFG Should Not Be Dismissed ..................................................................................................23

VII. PLAINTIFF HAS PROPERLY PLED AIDING AND ABETTING CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ..........................................24

CONCLUSION......................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Abramo v. Teal, Becker & Chiaramonte, CPA's, P.C.*,
    2010 U.S. Dist. LEXIS 46427 (N.D.N.Y May 12, 2010)..................................................4

*Baron v. Port Authority*,
    271 F.3d 81 (2d Cir. 2001)................................................................................12, 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................4, 5, 21

*Bentley v. ASM Communications, Inc.*,
    1991 U.S. Dist. LEXIS 7855 (S.D.N.Y. June 11, 1991) ................................................18

*Bergstein v. Jordache Enterprises, Inc.*,
    767 F. Supp. 535 (S.D.N.Y. 1991)..........................................................................9

*Brady v. Calyon Sec.*,
    2007 U.S. Dist. LEXIS 92602 (S.D.N.Y. 2007)..............................................................12

*Bridgestone/Firestone v. Recovery Credit Services*,
    98 F.3d 13 (2d Cir. 1996) ..................................................................................17

*Computech International, Inc. v. Compaq Computer Corp.*,
    2004 U.S. Dist. LEXIS 9120 (S.D.N.Y. May 21, 2004) ....................................................15

*Cook v. Arrowsmith Shelburne, Inc.*,
    69 F.3d 1235 (2d Cir. 1995)..................................................................................24

*Cruz v. Coach Stores, Inc.*,
    202 F.3d 560 (2d Cir. N.Y. 2000)..........................................................................20

*Doehla v. Wathne Ltd.*,
    1999 U.S. Dist. LEXIS 11787 (S.D.N.Y. 1999)............................................................15

*EEOC v. Cosmair, Inc., L'Oreal Hair Care Division*,
    821 F.2d 1085 (5th Cir. 1987) ..............................................................................11

*EEOC v. SunDance Rehabilitation Corp.*,
    466 F.3d 490 (6th Cir. 2006) ..............................................................................10

*In re Elevator Antitrust Litigation*,
    502 F.3d 47 (2d Cir. 2007)..................................................................................5

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co.*,
   375 F.3d 168 (2d Cir. 2004)................................................................10, 19

*Feingold v. New York*,
   366 F.3d 138 (2d Cir. 2004)........................................................................25

*Fraser v. Fiduciary Trust Co.*,
   417 F. Supp. 2d 310 (S.D.N.Y. 2006).........................................................6, 7

*Gattegno v. Admin. Review Bd.*,
   353 Fed. Appx. 498 (2d Cir. 2009) ...............................................................5

*Giannone v. Deutsche Bank Securities*,
   392 F. Supp. 2d 576 (S.D.N.Y. 2005)............................................................12

*Gorrill v. Icelandair/Flugleidir*,
   761 F.2d 847 (2d Cir. 1985)....................................................................12, 13

*Graves v. Deutsche Bank Securities, Inc.*,
   2010 U.S. Dist. LEXIS 25733 (S.D.N.Y. Mar. 17, 2010) ...........................16, 17

*Gregory v. Daly*,
   243 F.3d 687 (2d Cir. 2001).........................................................................21

*Harden v. Warner Amex Cable Committee*,
   642 F. Supp. 1080 (S.D.N.Y. 1986).............................................................12

*Johnson v. Palma*,
   931 F.2d 203 (2d Cir. 1991).........................................................................24

*Kerin v. United States Postal Service*,
   116 F.3d 988 (2d Cir. 1997).........................................................................10

*Lash Corp. v. Fisher Hamilton Scientific*,
   1996 U.S. Dist. LEXIS 2748 (W.D.N.Y. Jan. 10, 1996)............................10, 19

*Liburd v. Bronx Leb. Hospital Ctr.*,
   2009 U.S. Dist. LEXIS 61131 (S.D.N.Y. Apr. 2, 2009)................................20

*Livingston v. Wyeth, Inc.*,
   520 F.3d 344 (4th Cir. 2008) .........................................................................7

*Mahony v. KeySpan Corp.*,
   2007 U.S. Dist. LEXIS 22042 (E.D.N.Y. Mar. 12, 2007) ................................6

*Maher v. Alliance Mortg. Banking Corp.*,
    650 F. Supp. 2d 249 (E.D.N.Y. 2009) ...........................................................................25

*Marfia v. T.C. Ziraat Bankasi*,
    147 F.3d 83 (2d Cir. 1998)....................................................................................................13

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (U.S. 1973).....................................................................................................21

*McDowell Research Corp. v. Tactical Support Equipment, Inc.*,
    2009 U.S. Dist. LEXIS 80884 (W.D.N.Y. Sept. 4, 2009) ...................................................17

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
    500 F.3d 171 (2d Cir. 2007)..................................................................................................17

*Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Md.*,
    1990 U.S. Dist. LEXIS (S.D.N.Y. 1990).............................................................................14

*Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*,
    261 F.R.D. 13 (S.D.N.Y. 2009) .................................................................................... 15-16

*In re NYSE Specialists Securities Litigation*,
    503 F.3d 89 (2d Cir. 2007)......................................................................................................5

*Patane v. Clark*, 508
    F.3d 106 (2d Cir. 2007)...........................................................................................................4

*Perks v. Town of Huntington*,
    96 F. Supp. 2d 222 (E.D.N.Y. 2000) ...................................................................................25

*Portes v. Wyeth Pharmaceuticals, Inc.*,
    2007 U.S. Dist. LEXIS 60824 (S.D.N.Y. Aug. 20, 2007)....................................................7

*Reilly v. Natwest Markets Group Inc.*,
    181 F.3d 253 (2d Cir. 1999)..................................................................................................18

*Richardson v. Commission on Human Rights and Opportunities*,
    532 F.3d 114 (2d Cir. 2008)..................................................................................................10

*Smith v. Corning, Inc.*,
    496 F. Supp. 2d 244 (W.D.N.Y. 2007) ..................................................................................6

*Solow v. Conseco Inc.*,
    2008 U.S. Dist. LEXIS 9234 (S.D.N.Y. Jan. 11, 2008) ......................................................15

*Stordeur v. Computer Associates International*,
    995 F. Supp. 94 (E.D.N.Y. 1998) ...................................................................25

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)..........................................................................................20

*TVT Records v. Island Defense Jam Music Group*,
    412 F.3d 82 (2d Cir. 2005)...............................................................................16

*Trusz v. UBS Realty Investors, LLC*,
    2010 U.S. Dist. LEXIS 30374 (D. Conn. Mar. 30, 2010)...................................8

*Verzani v. Costco Wholesale Corp.*,
    641 F. Supp. 2d 291 (S.D.N.Y. 2009).........................................................10, 19

**STATE CASES**

*Albert Apartment Corp. v. Corbo Co.*,
    182 A.D.2d 500 (1st Dep't 1992) ...................................................................14

*Booth v. McDonnell Douglas Truck Services*,
    585 A.2d 24 (1991) ...........................................................................................9

*Lobosco v. New York Telegraph*,
    727 N.Y.S.2d 383 (2001)..................................................................................12

*Mirchel v. RMJ Securities Corp.*,
    205 A.D.2d 388 (1st Dep't 1994) ...............................................................11, 20

*Mulder v. Donaldson, Lufkin & Jenrette*,
    623 N.Y.S.2d 560 (1st Dep't 1995) .................................................................12

*National Union Fire Insurance Co. v. Worley*,
    257A.D.2d 228 (1st Dep't 1999) .....................................................................14

*Truelove v. Northeast Capital & Advisory, Inc.*,
    95 N.Y.2d 220 (N.Y. 2000) .............................................................................18

*Watson v. Prentice-Hall, Inc.*,
    50 A.D.2d 1077 (4th Dep't 1975).....................................................................20

*Weiner v. McGraw-Hill*,
    57 N.Y.2d 458 (N.Y. 1982) .............................................................................12

*Weiner v. The Diebold Group*,
    173 A.D.2d 166 (1st Dep't 1991) ...........................................................11, 19, 20

**FEDERAL STATUTES**

18 U.S.C. § 1514a ........................................................................................................5

42 U.S.C. § 1981 .......................................................................................................20

42 U.S.C. § 2000 .......................................................................................................20

Fed. R. Civ. P. 12(b)(6) ...............................................................................................4

N.Y. Labor Law § 190 *et seq.* ...........................................................................11, 18

N.Y. Labor Law § 193 *et seq.* ...........................................................................11, 18

N.Y.C. Admin. Code ...................................................................................................24

N.Y. Exec. Law ..........................................................................................................25

## PRELIMINARY STATEMENT

Plaintiff Christopher Cloke-Brown ("Plaintiff" or "Mr. Cloke-Browne") respectfully submits this Memorandum of Law, in opposition to Defendants Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"), Mitsubishi UFJ Financial Group, Inc. ("MUFG"), Hideyuki Toriumi ("Toriumi"), Timothy S. Tracey ("Tracey"), Randall C. Chafetz ("Chafetz") and Anthony Moon ("Moon") (collectively, "Defendants") motion to dismiss Plaintiff's Amended Complaint dated March 22, 2010 ("Complaint"). As set forth below, Defendants' motion is devoid of merit as a matter of both fact and law, and should therefore be denied in its entirety.

## STATEMENT OF FACTS

Mr. Cloke-Browne is a Caucasian male of African descent who was employed as a Senior Vice President by BTMU, a wholly owned subsidiary of MUFG (collectively, the "Company"), from on or about March 2, 2007 through May 1, 2009 in the Credit Portfolio Management Division for the Americas ("CPMDA"). Compl. ¶¶ 6, 7. Defendants Toriumi, Tracey, Chafetz and Moon were Plaintiff's supervisors throughout the duration of his employment. *Id.* ¶¶ 14-21.

The terms of Mr. Cloke-Browne's compensation were set forth in an employment contract dated November 7, 2006 ("Employment Agreement") which provided for a base salary of $200,000 per year, in addition to yearly guaranteed minimum bonuses ("Guaranteed Minimum Bonus") and additional payments of deferred compensation ("Deferred Compensation") (collectively, "Guaranteed Additional Compensation"). *Id.* ¶¶ 51 – 54; Walker Decl., Ex. B. Additional terms and conditions of Plaintiff's employment were set forth in the Compliance Handbook, including a limitation on the Company's ability to terminate Plaintiff in retaliation for complaining about a violation of law or policy concerning financial improprieties. *Id.* ¶ 156. Prior to Plaintiff's acceptance of Defendants' offer of employment, Defendants made assurances

to Plaintiff including, but not limited to, that: he would be provided with the ability to modernize the handling of various insurance-based assets; would have access to over $1.5 billion of Defendants' balance sheet; and that his business plans would be submitted to the Tokyo office for approval. *Id.* ¶¶ 32 – 35, 137. In reliance on the terms of his Employment Agreement, the terms of Defendants' Compliance Handbook, and the affirmative representations regarding the terms and conditions of his employment, Mr. Cloke-Browne declined an employment offer of $1,400,000 EUR from Credit Suisse, among other offers. *Id.* ¶¶ 30, 31.

Following the execution of the Employment Agreement, and throughout Mr. Cloke-Browne's employment, he was stymied in his ability to execute deals and was denied access to the funds necessary to advance his business. *Id.* ¶¶ 37 – 55. For example, Plaintiff did not have access to $1.5 billion of Defendants' balance sheet that he had been guaranteed. *Id.* ¶ 137 - 138. Defendants also refused to support deals that Mr. Cloke-Browne arranged, and even refused to meet with him on other deals. *Id.* ¶ 35 – 55. In one instance, Defendant Moon once offered to provide Plaintiff with $200 million to invest in natural catastrophic risk, only to promptly withdraw his support. *Id.* ¶ 44. Defendant Tracey also prevented Plaintiff from closing a deal that had previously been approved. *Id.* ¶ 45-46. This pattern of stonewalling Plaintiff's efforts to conduct his business persisted throughout the duration of his employment. *Id.* ¶¶ 35-55.

As Plaintiff learned, this treatment was the product of a culture of discrimination that pervaded the Company. *Id.* ¶¶ 56 - 65. Indeed, in contrast to Plaintiff, less qualified employees of Japanese descent were permitted to engage in meaningful business transactions. *Id.* ¶ 60. However, Mr. Cloke-Browne's client contacts were taken from him and provided to Japanese employees to conduct deals. Defendants also outsourced Plaintiff's job responsibilities to Japanese employees and Plaintiff's Japanese superiors freely admitted that they gave him a lower

performance rating than he deserved. *Id.* ¶¶ 58, 62.  Defendants' pattern of discrimination resulted in a purported "staff reduction" that exclusively targeted Caucasians, did not include any employees of Japanese descent, and resulted in Plaintiff's abrupt termination.  *Id.* ¶ 64.

But even under these difficult circumstances, Plaintiff still endeavored to proactively improve the Company.  In 2008, Mr. Cloke-Browne repeatedly warned Defendants and other senior management about the Company's serious violations of the securities laws. *Id.* ¶ 75.  For instance, in or around September 2008, Mr. Cloke-Browne discovered and subsequently reported that the Company was not properly calculating or publicly reporting its risk levels, thereby defrauding its shareholders. *Id.* ¶ 76.  In addition to these verbal warnings, Mr. Cloke-Browne circulated reports to senior managers, demonstrating how particular ratings had been improperly calculated, highlighting the systemic deficiencies in the Company's management and overall exposure.  *Id.* ¶ 76.  Specifically, Mr. Cloke-Browne reviewed a myriad of models containing data for Hartford Life Insurance and wrote and distributed a 12-page report detailing the improper risk calculations and other related errors/problems that he had identified. *Id.* ¶ 76.  This report was circulated among the managers at the Company, including individual Defendants, all of whom had knowledge of the report.

Throughout 2009, Mr. Cloke-Browne attended a number of meetings where he again expressed concern over the business practices of the Company and their calculations of exposure in the U.S.  *Id.* ¶ 78.  Mr. Cloke-Browne also repeatedly emphasized that the Company should acknowledge the substantial risk that AIG's financial troubles would pose to BTMU/MUFG.  *Id.* ¶ 78.  Mr. Cloke-Browne circulated emails that memorialized his concerns over the AIG exposure.  *Id.* ¶ 78.  Significantly, BTMU and Defendant Tracey afforded AIG the second highest rating in the BTMU rating scale on the day that AIG received federal aid in early 2009.

However, Defendant Tracey failed to report Mr. Cloke-Browne's concerns because he desired to downplay any risk arising from AIG as he had already approved roughly $2 billion in exposure to AIG. *Id.* ¶ 83 - 84. By February 2009, as a result of the foregoing, Plaintiff's role at the company had become substantially marginalized. *Id.* ¶ 80 - 89.

Shortly after Plaintiff's repeated protected complaints, the Company eliminated the Alternative Credit Investment Business ("ACI") for the stated reason that the division was not earning a profit. Of course, Mr. Cloke-Browne was never provided any bona fide opportunity to make this division profitable. *Id.* ¶ 55. As stated above, this purported "staff reduction" exclusively targeted Caucasians and did not include any individuals of Japanese ancestry. *Id.* ¶ 64. Following Plaintiff's termination, Defendants also unlawfully failed to pay him earned wages, in violation of the Employment Agreement and New York State Labor Law, despite the fact that Mr. Cloke-Browne was contractually entitled to a $400,000 Minimum Guaranteed Bonus for 2008 as well as guaranteed Deferred Compensation in the amount of $333,333.

## ARGUMENT

### I.    APPLICABLE LEGAL STANDARD ON A MOTION TO DISMISS

A party seeking dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) "bears a heavy burden, as the question presented by such a motion is not whether the claimant is ultimately likely to prevail, but whether the claimant is entitled to offer evidence to support the claims." *Abramo v. Teal, Becker & Chiaramonte, CPA's, P.C.*, 2010 U.S. Dist. LEXIS 46427 at *8 (N.D.N.Y May 12, 2010). To withstand a motion to dismiss, a complaint need only plead "enough facts to state a claim for relief that is plausible on its face." *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the court must accept all allegations in the complaint as true and "draw all inferences

in the light most favorable" to the plaintiff. *In re NYSE Specialists Securities Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

Here, Plaintiff's Complaint goes far beyond the minimal pleading requirements. Plaintiff's 36-page Complaint sets forth specific, rather than conclusory, allegations as to each cause of action, as set forth at length in greater detail below. As such, Plaintiff has far exceeded the necessary allegations to "nudge [the] claims across the line from conceivable to plausible." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007)(quoting *Twombly*, 550 U.S. at 570).

## II.    PLAINTIFF HAS PROPERLY PLED A SARBANES-OXLEY CLAIM

### A.    Plaintiff Has Properly Pled A Cause Of Action For Whistleblower Retaliation Under Sarbanes-Oxley

Plaintiff has properly pled a cause of action for retaliation in violation of the Sarbanes-Oxley Act ("SOX") as he has alleged, (1) engagement in a protected activity, (2) Defendants' knowledge of his protected activity, (3) an unfavorable employment action, and (4) an inference that the protected activity played a contributing factor in the unfavorable action. *Gattegno v. Admin. Review Bd.*, 353 Fed. Appx. 498, 500 (2d Cir. 2009). Plaintiff alleged numerous protected complaints that he raised with Defendants regarding his reasonable belief that Defendants were violating the enumerated SOX securities laws. Following such complains, Mr. Cloke-Browne was marginalized, terminated and denied earned wages. Compl. ¶¶ 80 - 89.

The sufficiency of Plaintiff's allegations of protected SOX activity is not even debatable. Plaintiff alleged that he complained on numerous occasions regarding the Company's financial improprieties and potential shareholder fraud. In September 2008, when Plaintiff was asked to engage in "deal screening" whereby he would assess risk and exposure levels, he learned that the Company was not properly calculating its risk levels and shareholders were thus misrepresented as to the Company's financial condition. *Id.* ¶ 76. Mr. Cloke-Browne drafted a 12-page detailed

report of his findings and distributed the same to the individual Defendants.  Further, Plaintiff was informed that the Company was adding exposure to a financially weak subsidiary of a major company, based on a guarantee by the parent.  However, Plaintiff was advised that the parent company's guarantee was worthless and Plaintiff subsequently informed the individual Defendants that more deal screening was necessary.  *Id.* ¶ 77.  Throughout early 2009, Plaintiff attended Company meetings wherein he expressed concerns of the Company's practices and exposure calculations with regard to AIG investments.  *Id.* ¶ 78.  Plaintiff circulated emails regarding his concerns, but Defendant Hosomi and others failed to take Mr. Cloke-Browne seriously.  *Id.*  The Company and Defendant Tracey gave AIG the second highest rating available even as AIG received federal aid in 2009.  *Id.* ¶ 79.  Defendant Tracey was aware of Plaintiff's concerns but downplayed the risk, as he had approved roughly $2 million in AIG exposure.  *Id.* ¶ 78.  Subsequently, Plaintiff was instructed to no longer circulate emails about AIG.  *Id.* ¶ 85.

Plaintiff's complaints clearly constitute SOX protected activity as he expressly stated that the Company was improperly engaging in high-risk investments, improperly recording its risk and exposure to certain volatile investments, and thus defrauding the shareholders as to the value of the Company's assets.  *Fraser v. Fiduciary Trust Co.,*  417 F. Supp.2d 310 (S.D.N.Y. 2006)(denying motion to dismiss where plaintiff sent email stating that although one group of company was recommending to buy certain investments, that the investment was risky and should be avoided, and plaintiff was told not to distribute the email firm wide); *Smith v. Corning, Inc.*, 496 F. Supp. 2d 244, 250 (W.D.N.Y. 2007)(denying motion to dismiss where plaintiff alleged that defendants repeatedly refused to address a problem that was resulting in incorrect financial information being reported); *see also*, *Mahony v. KeySpan Corp.,* 2007 U.S. Dist. LEXIS 22042 at *15 (E.D.N.Y. Mar. 12, 2007)(denying summary judgment motion, noting that, "a fair and

6

reasonable juror could find that Plaintiff reasonably believed that the company was engaging in accounting practices that needed to be corrected before its financial statements misled shareholders"); *Livingston v. Wyeth, Inc.*, 520 F.3d 344 (4th Cir. 2008)(denying summary judgment where plaintiff produced a report that implicated shareholder fraud and when he was formally instructed to stop reporting noncompliance).

Despite Plaintiff's numerous protected complaints, Defendants argue that none of these complaints placed Defendants on notice that Plaintiff was engaging in a protected activity under SOX because he did not use the language "defrauding shareholders" in his complaints.  It is well established that a SOX protected complaint need not cite the specific law or regulation that one believes is being violated.  *Portes v. Wyeth Pharms.*, *Inc.*, 2007 U.S. Dist. LEXIS 60824 at * 9 (S.D.N.Y. Aug. 20, 2007); *Fraser*, 417 F. Supp. 2d at 322.  Rather, the "context" of the disclosure and "the circumstances giving rise to the communication," if related to potential fraud against shareholders, is sufficient to satisfy the pleading requirements of a SOX whistleblower claim.  *Id.* Where the complaint is "barren of any allegations of conduct that would alert [a defendant] that [the plaintiff] believed the company was violating any federal rule or law related to fraud against shareholders," that complaint is not protected by SOX.  *Fraser*, 417 F. Supp. 2d at 322 (plaintiff's complaints were protected activity despite no reference to "fraud on shareholders").

Further, Defendants seemingly make an affirmative statement of fact that Plaintiff failed issue any formal complaints to the Compliance Department.  Def. Mem. at 22.  This allegation is inappropriate on a motion to dismiss where the inquiry is the sufficiency of the pleading. However, Defendants do not support this allegation with any affidavit or other admissible evidence, but merely cite to a  provision of the Compliance Handbook that relates to compliance

7

complaints.  In fact, Plaintiff did make complaints to the Compliance Department regarding

Defendants' financial exposure and improprieties.  *See*, Wigdor Aff. at 4.

Lastly, Plaintiff's claims are not time-barred as he filed a SOX complaint with the U.S.

Department of Labor on June 26, 2009, within 90 days of the marginalization of his employment

in February 2009, and his termination and withholding of wages in May 2009.  Compl. ¶ 27.

### B.  Defendant MUFG May Be Held Liable As An Integrated Employer

Defendant MUFG may be held liable as Plaintiff's employer under SOX due to the

integrated employer test.  Under the integrated employer standard, a parent may be held liable for

the conduct of its subsidiary based on the following factors: (1) the interrelation of operations, (2)

the centralized control of labor relations, (3) common management, and (4) common ownership

and financial control.  *Trusz v. UBS Realty Investors, LLC*, 2010 U.S. Dist. LEXIS 30374 at * 21

(D. Conn. Mar. 30, 2010).  Plaintiff has alleged an interrelation of operations, centralized control

of labor, as well as common management and control, between Defendants MUFG and BTMU.

Compl. ¶¶ 9 – 13.  Plaintiff has bolstered these allegations with exhibits to the complaint that

demonstrate that MUFG has 100% ownership and voting rights in Defendant BTMU, and that

many Defendant MUFG's officers and directors also hold officer positions for Defendant BTMU.

At the pleading stage, these allegations are more than sufficient.  *Id.* at * 21-22 (plaintiff met the

pleading stage burden regarding integrated employer test with allegations from which integrated

employer could be inferred).

### III.    PLAINTIFF HAS PROPERLY PLED CAUSES OF ACTION FOR BREACH OF EXPRESS AND IMPLIED CONTRACT

#### A.  Plaintiff Has Properly Pled A Claim For Breach Of Contract

Plaintiff and the Company executed the Employment Agreement providing that Mr.

Cloke-Browne would provide services in exchange for guaranteed base compensation as well as

Guaranteed Additional Compensation.  *See*, Walker Decl., Ex. A.  As alleged in the Complaint, the Company breached that contract by refusing to pay him contractually owed compensation to which he was expressly entitled.  Compl. ¶ 153.

As a preliminary matter, Defendants' assertion that an at-will employee categorically cannot maintain a breach of contract action is flatly incorrect.  Plaintiff's breach of contract action based on Defendants' failure to pay him his contractually agreed upon compensation is cognizable, even for an at-will employee.  *Bergstein v. Jordache Enters., Inc.*, 767 F. Supp. 535 (S.D.N.Y. 1991)(denying motion to dismiss where defendant asserted at-will employee defense to claims for breach of contract for failure to pay wages); *Booth v. McDonnell Douglas Truck Servs.*, 585 A.2d 24, 28 (1991)(at-will employees may assert breach of contract claim based on the employer's failure to pay commissions pursuant to contract).

Defendants further incorrectly argue that Plaintiff cannot maintain a breach of contract action because any obligation to pay the Guaranteed Additional Compensation purportedly ceased upon Mr. Cloke-Browne's termination and his refusal to execute "a release."  Def. Mem. at 5 - 6.  Defendants rely on the provision of the Employment Agreement that provides:

> If you are terminated for "unsatisfactory performance, position elimination, other reason or employment at will, you will nevertheless receive the referred to bonus distributions on the bonus distribution dates in 2007 for Fiscal Year 2006, in 2008 for Fiscal Year 2007, and in 2009 for Fiscal Year 2008, as the case may be, so long as you execute the Bank's **standard release of claims**; such payment will be considered severance.

*See*, Walker Aff., Ex. B. (emphasis added)

Assuming, *arguendo*, the validity of this provision, the terms of the contract specifically provide that such compensation was dependent on signing not simply "a release," but specifically the Company's "standard release."  Defendants have not set forth any allegation or evidence as to the existence of a "standard release" let alone that this alleged "standard release" was ever

provided to Plaintiff.  The Employment Agreement did not set forth the terms of the purported "standard release" nor was a copy attached thereto.  As such, the term "standard release" is vague and ambiguous in this context, and dismissal is improper.

Ambiguity in a contract is defined as "the inadequacy of the wording to classify or characterize something that has potential significance."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 178 (2d Cir. 2004).  And on "a motion to dismiss [the Court] should resolve any ambiguities in [the non-moving party's] favor." *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 299 (S.D.N.Y. 2009)(citations omitted).  Further, ambiguities should be "construed against the drafter," which in this case is Defendants.  *Kerin v. United States Postal Service*, 116 F.3d 988, 992-993 (2d Cir. 1997).  Where a contract term is ambiguous, dismissal is premature and discovery is required.  *Eternity Global*, 375 F.3d at 168 ("if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim"); *Lash Corp. v. Fisher Hamilton Scientific*, 1996 U.S. Dist. LEXIS 2748 at * 8 (W.D.N.Y. Jan. 10, 1996)("[a]ccordingly, because the contract's language is ambiguous, defendant's motion for summary judgment is premature").  Thus, Plaintiff is entitled to conduct discovery as to the existence, or lack thereof, of a "standard release" and whether the release that Plaintiff was requested to sign, which required a waiver of all discrimination claims, was in fact Defendants' standard release.

Furthermore, courts have held that certain releases may be unenforceable as against public policy.  *Richardson v. Commission on Human Rights and Opportunities*, 532 F.3d 114, 121 (2d Cir. 2008)(recognizing that some circuits have forbidden any release or waiver of the right to file a charge with the EEOC); *EEOC v. SunDance Rehabilitation Corp.*, 466 F.3d 490, 498 (6th Cir. 2006)(holding that prohibitions on filing charges with the EEOC are void and unenforceable as

against public policy); *EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1090 (5th Cir. 1987). Thus, discovery as to the nature and terms of Defendants' purported "standard release" to the extent such a release exists is necessary to determine the whether the "standard release" clause of the Employment Agreement is enforceable.

Moreover, the "standard release" provision of the Employment Agreement is void as against public policy, inasmuch as the above-referenced provision seeks to withhold earned wages in violation of New York Labor Law § 193, which provides that it is unlawful for an employer to "make any deduction from the wages of an employee." *See*, *Weiner v. The Diebold Group*, 173 A.D.2d 166, 167 (1st Dept. 1991)(in New York, there is a "long standing policy against the forfeiture of earned wages"). The term "wages" is defined broadly to encompass all "earnings of an employee for labor or labor services rendered, regardless of whether the amount of earning is determined on a time, piece, commission or other basis." N.Y. Labor Law § 190(1).

As described below, Plaintiff's Guaranteed Additional Compensation constituted "earned wages" under New York Labor Law, and the Company was not permitted to condition the payment of such wages on the execution of a waiver of Plaintiff's statutory discrimination claims. *See Weiner*, 173 A.D.2d at 167 (even where agreement that bonus was contingent on continued employment, denying motion to dismiss stating, "[w]hile the parties to a contract are free to make any bargain they wish and are held to bargains made by them with their eyes open, they are not free to enter into contracts which violate public policy. Thus, if the incentive compensation payments were payments of earned wages, the plaintiff could not contract to forfeit them")(internal citations omitted); *see also*, *Mirchel*, 205 A.D.2d at 388 ("[e]mployees in this State may enforce an agreement to pay an annual bonus made at the onset of the employment relationship where such bonus constitutes an integral part of the plaintiff's compensation

11

package.")(*citing Harden v. Warner Amex Cable Comm.*, 642 F.Supp. 1080, 1096 (S.D.N.Y. 1986))(internal citations omitted); *Giannone v. Deutsche Bank Securities*, 392 F. Supp.2d 576 (S.D.N.Y. 2005)(holding that guaranteed bonus "constitute[s] a term of employment, akin to annual salary, rather than a discretionary perquisite.")

### B. Plaintiff Has Properly Pled A Cause Of Action For Breach of Implied Contract

It is well established that the presumption of employment at-will can be rebutted by establishing an "express limitation in the individual contract of employment curtailing an employer's right to terminate at will." *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 851 (2d Cir. 1985). Policies in an employee manual create such a contract, where there is: (1) an express written policy limiting the employer's right of discharge, (2) the employer made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment. *See, Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 465-466 (N.Y. 1982); *Baron v. Port Auth.*, 271 F.3d 81, 85 (2d Cir. 2001); *Lobosco v. New York Tel.*, 727 N.Y.S.2d 383 (2001).

Many courts have refused to dismiss causes of action for breach of implied contract based on anti-retaliation and whistleblower provisions of employee handbooks. *Brady v. Calyon Sec.*, 2007 U.S. Dist. LEXIS 92602 (S.D.N.Y. 2007)(denying summary judgment on breach of implied contract claim on the basis of a whistleblower anti-retaliation provision of employee handbook); *Mulder v. Donaldson, Lufkin & Jenrette*, 623 N.Y.S.2d 560, 564 (1st Dept. 1995)(stating "since this reporting requirement and reciprocal promise of protection in the manual impose an *express limitation* on the right of [the employer] to terminate employees who make such reports, plaintiff possesses a cause of action breach of contract"); *see also, Baron* 271 F.3d at 85 ("[p]olicies in a personnel manual specifying the employer's practices with respect to the employment

12

relationship, including the procedures or grounds for termination, may become a part of the

employment contract.")(citing *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 87-89 (2d Cir.

1998)(holding that policies set out in employee handbook formed implied contractual

obligations)); *Gorrill*, 761 F.2d 847 (2d Cir. 1985)(holding that policies set out in employee

handbook formed implied contractual obligations);

The Compliance Handbook in the matter at bar states explicitly that "[t]he Bank prohibits

retaliation against an employee who reports or complains about conduct that the employee

reasonably believes is a violation of law or policy, including the reporting of financial

improprieties." Walker Decl., Ex. D at 8. Thus, Defendants have a written Compliance

Handbook that limits the Company's ability to terminate Plaintiff's employment at-will. As

alleged, Plaintiff was made aware of this policy, and he relied upon it in accepting Defendants'

offer of employment and his continuing employment with Defendants. Compl. ¶¶ 155 - 160.

Therefore, Plaintiff has properly pled the existence, and breach, of an implied contract.

Although the Employee Handbook, a wholly separate and distinct document from the

Compliance Handbook, contains a disclaimer that notwithstanding any provision therein

employment is at-will, the Compliance Handbook contains no such provision whatsoever. *See*,

Walker Decl., Ex. D. Although Defendants hopelessly argue that the Compliance Handbook

"likewise refers to the conduct identified therein as guidelines, not a contract," no such provision

actually exists. Rather, the Compliance Handbook merely contains the term "guidelines" in only

two inconspicuous locations, embedded within dense paragraphs of text. It is only when "a

sufficiently unambiguous disclaimer, conspicuously placed in the employee handbook such that

the employee reasonably could be expected to read it is at issue . . . [that] the implied contract

claim may be dismissed as a matter of law." *Baron*, 271 F.3d at 88.

IV.   **PLAINTIFF HAS PROPERLY PLED CAUSES OF ACTION FOR FRAUDULENT INDUCEMENT, FRAUDULENT CONCEALMENT OR PROMISSORY ESTOPPEL**

### A.  Plaintiff Has Properly Pled A Cause Of Action For Fraudulent Inducement

Plaintiff has properly alleged the elements of a claim for fraudulent inducement, including: (1) the defendant's knowing misrepresentation of a material fact, (2) the misrepresentation was made for the purpose of inducing plaintiff to rely on it, (3) plaintiff's justifiably relied on that misrepresentation, and (4) damages as a result. *National Union Fire Ins. Co. v. Worley*, 257 A.D.2d 228 (1st Dept. 1999).  Plaintiff has alleged that Defendants knowingly misrepresented that Plaintiff would be given the ability to modernize BTMU through the handling of insurance linked assets, that Defendants would support his business, that his business plans would be submitted to Tokyo for approval, that he would have access to $1.5 billion of the balance sheet and that Defendants would provide Plaintiff with a $200 million for natural catastrophic investments. Compl. ¶¶ 43 -44.  Plaintiff relied on these misrepresentations when he agreed to join, and remain, as Defendants' employee.  *Id.* ¶¶ 137 - 143.

Defendants incorrectly allege that Plaintiff's claims for fraudulent inducement are not viable because the alleged misrepresentations pertained to "future actions," rather than "then existing fact[s]."  Def. Mem. at 9.  In some instances, misrepresentations as to future events may not be actionable where they are merely "predicting a future event with no knowledge of whether or not the event may occur." *Albert Apartment Corp. v. Corbo Co.*, 182 A.D.2d 500 (1st Dept. 1992).  Put another way, "a specific nation of an arrangement under which something is to occur, when the party making the nation knows perfectly well that no such thing is to occur, must be distinguished from a prophesy and prediction of something which it is merely hoped for or expected will occur." *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Md.*, 1990 U.S. Dist.

LEXIS (S.D.N.Y. 1990). Defendants' misrepresentations in the matter at bar clearly fall into the former category as Defendants made affirmative representations as to specific events that were "to occur" if he became and remained employed with Defendants. Defendants' misrepresentations were not "prophesy and prediction of something which it [was] merely hoped," but affirmative representations of fact.

Further, future promise can serve as the basis for a fraud action where such misrepresentations are made with a present intent to deceive. *Computech Int'l., Inc. v. Compaq Computer Corp.*, 2004 U.S. Dist. LEXIS 9120 (S.D.N.Y. May 21, 2004)("a failure to perform promised future acts can serve as the basis for a fraud claim where a party establishes that there was an intent not to perform existing at the time that the promise was made"). Defendants' misrepresentations constituted a present intent to deceive Plaintiff as to the terms and conditions of his employment, when at all times Defendants knew such representations to be false. Compl. ¶ 139. As such, Plaintiff has properly pled a cause of action for fraudulent misrepresentation.

Additionally, so long as reasonable reliance as been pled, the fact-specific inquiry as to the reasonableness of one's reliance is not an appropriate inquiry at the pleading stage. *Solow v. Conseco Inc.*, 2008 U.S. Dist. LEXIS 9234, at *11 (S.D.N.Y. Jan. 11, 2008)("questions of reasonable reliance raise issues of fact that often make them unsuitable for determination on a motion to dismiss"); *Doehla v. Wathne Ltd.*, 1999 U.S. Dist. LEXIS 11787 at *10 (S.D.N.Y. 1999)(reasonable reliance is a fact-specific inquiry "generally considered inappropriate for determination on a motion to dismiss").

### B. Fraudulent Concealment

The elements of fraudulent concealment are: (1) failure to discharge a duty to disclose, (2) an intention to defraud, (3) reliance, and (4) damage. *Musalli Factory for Gold & Jewellry v.*

*JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 22 (S.D.N.Y. 2009). The duty to disclose arises in three circumstances: (1) where there is a fiduciary relationship between the parties, (2) where one party possesses superior knowledge, not readily available to the other, and knows that the other party is acting on the basis of mistaken knowledge," or (3) where a "party has made a partial or ambiguous statement." *Congress Fin. Corp*, 790 F. Supp. 459, 472 (S.D.N.Y. 1992) (*citing Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir. 1984)); *K.M.L. Lab.*, 830 F. Supp. at 167 (*citing Junius Constr. Corp. v. Cohen*, 257 N.Y. 393, 400, 178 N.E. 672 (1931)).

Plaintiff has alleged that he engaged in a transaction with Defendants who possessed superior knowledge regarding the actual terms and conditions under which Plaintiff would be employed with Defendants. Compl. ¶ 147. This allegation is plausible on its face given that the Defendants were supervisory employees who would naturally possess superior knowledge as to the conditions of Plaintiff's employment at the Company. Plaintiff alleged that Defendants concealed this information with the intent to deceive Plaintiff into accepting and continuing employment with the Company.

Defendants' reliance on *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 90 (2d Cir. 2005) for the proposition that an intent to breach a contract is not actionable as fraudulent concealment is misplaced. Plaintiff's claim of fraudulent concealment is separate and distinct from his breach of contract claims, as it is based on Defendants' oral misrepresentations and omissions, rather than the terms set forthe in the Employment Agreement or the Compliance Handbook. Similarly misplaced is Defendants' reliance on *Graves v. Deutsche Bank Secs., Inc.*, 2010 U.S. Dist. LEXIS 25733 (S.D.N.Y. Mar. 17, 2010). In *Graves*, the Court simply held that the plaintiff failed to adequately plead fraudulent concealment where no specificity was set forth

as to the details of any statements or the identity of the individuals who purportedly made such statements. 2010 U.S. Dist. LEXIS 25733 at *13-14.  In contrast, in the matter at bar, Plaintiff has set forth specific affirmative misrepresentations and facts from which one can infer material omissions.  Thus, Plaintiff has adequately pled a cause of action for fraudulent concealment.

### C.  Plaintiff's Fraud Claims Are Not Duplicative Of His Breach Of Contract Claims

Under New York law, "parallel fraud and contract claims may be brought only if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc*., 500 F.3d 171, 183 (2d Cir. 2007). Plaintiff's fraud claims are not duplicative of his contract claims as the fraud claims are based on a legal duty separate and apart from the Defendants' duties under the contract and are based on extraneous misrepresentations. In order to be "considered 'collateral,' the promise must be a promise to do something other than what is expressly required by the contract." *McDowell Research Corp. v. Tactical Support Equip.*, *Inc.*, 2009 U.S. Dist. LEXIS 80884 at * 23 (W.D.N.Y. Sept. 4, 2009) (*citing Bridgestone/Firestone v. Recovery Credit Servs*., 98 F.3d 13 (2d Cir. 1996)).  Plaintiff's breach of contract claim is based on Defendants' failure to provide Plaintiff with contractually agreed upon compensation (express contract) and Defendants' termination of Plaintiff's employment in violation of the terms of the Compliance Handbook (implied contract).  In contrast, Plaintiff's fraud claims are based on Defendants' affirmative misrepresentations and material omissions upon which Plaintiff relied when he declined alternative offers of employment, accepted Defendants' offer of employment and continued to remain in Defendants' employ.  Thus, Plaintiff's fraud claims are not duplicative of Plaintiff's breach of contract claims.

17

## V.    PLAINTIFF HAS PROPERLY PLED VIOLATIONS OF NEW YORK LABOR LAW

New York Labor Law § 193 provides that it is unlawful for an employer to "make any deduction from the wages of an employee."  The term "wages" is defined broadly to encompass all "earnings of an employee for labor or labor services rendered, regardless of whether the amount of earning is determined on a time, piece, commission or other basis." N.Y. Labor Law § 190(1).  Here, as alleged in the Complaint, Defendants violated Section 193 by withholding Mr. Cloke-Browne's Guaranteed Minimum Bonus and Deferred Compensation following his termination.  Compl. ¶¶ 161 - 168.

Where an employee's compensation is guaranteed and not dependant on any discretionary or subjective factors, such compensation is a "wage" and cannot be withheld.  *Bentley v. ASM Communications, Inc.*, 1991 U.S. Dist. LEXIS 7855 (S.D.N.Y. June 11, 1991)(plaintiff's guaranteed bonus was "wages" under New York Labor Law); *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253 (2d Cir. 1999)(holding that plaintiff's bonus constituted "wages" under Labor Law because it was calculated "to be a percentage of the revenue he generated" and not dependent on any subjective factors); *Truelove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220 (N.Y. 2000)(holding that compensation falls outside the scope of wages where it is discretionary). Plaintiff's Guaranteed Additional Compensation was guaranteed, not discretionary and not in any way tied to any subjective factors.  As such, the Guaranteed Additional Compensation constituted "wages" within the protection of the New York Labor Law.

Defendants unsuccessfully argue that the Employment Agreement provides that the Guaranteed Additional Compensation was contingent on Plaintiff's continued employment with Defendant at "the time these payments were due." Def. Mem. at 13 - 14.  This is incorrect in many regards.  First, the Employment Agreement only *arguably* provides that the Deferred

Compensation, but not the Minimum Guaranteed Bonus, is contingent on continued active employment. *See*, Walker Decl., Ex. B.   Second, the Employment Agreement is silent as to whether "continued active employment" refers to the time period in which the payment was earned or in which the payment is ordinarily paid.  While Defendants maintain that "continued active employment" is applicable to the payment date, Plaintiff maintains the more common-sense applicability to the period in which the compensation was earned.

Per the terms of the Employment Agreement, the Deferred Compensation (and Minimum Guaranteed Bonus) were earned during the 2008 Fiscal Year which ran from October 1, 2007 through September 31, 2008. *See*, Walker Decl., Ex. B.  Given that Plaintiff was continually employed during the period in which the wage was earned, Plaintiff has met the purported condition precedent.  At the very least, this ambiguity renders dismissal premature.  As described above, on "a motion to dismiss [the Court] should resolve any ambiguities in the non-moving party's favor." *Verzani*, 641 F. Supp. 2d at 299.  And where a contract term is ambiguous, dismissal is premature and discovery is required.  *Eternity Global*, 375 F.3d at 178; *Lash Corp.*, 1996 U.S. Dist. LEXIS 2748 at * 8.

Further, Defendants cannot transform an "earned wage" into conditional payment.  There is a "long standing policy against the forfeiture of earned wages . . . [and] while the parties to a contract are free to make any bargain they wish and are held to bargains made by them with their eyes open, they are not free to enter into contracts which violate public policy." *Weiner*, 173 A.D.2d at 167-168 (post-termination withholding of "bonus" which was deemed an "earned wage" held to violate public policy).  Thus, to the extent that Defendants seek to withhold payment of an "earned wage," pending compliance with a condition precedent of continued employment on the payment date, such a policy violates public policy and should be deemed

19

unenforceable. *Mirchel*, 205 A.D.2d at 390 (denying summary judgment where plaintiff sought to recover unpaid bonus following termination because, "[n]or can a bonus be withheld because, as here, the employee did not work until the bonus was to have been paid"); *Watson v. Prentice-Hall, Inc.*, 50 A.D.2d 1077 (4th Dept. 1975)(same). The same is true as regards Defendants' contention that that per the Employment Agreement, the Guaranteed Minimum Bonus and Deferred Compensation were deemed severance if Mr. Cloke-Browne were terminated, and thus does not constitute an earned wage. Put simply, Defendants cannot contract to withhold Plaintiff's earned wages. *Weiner*, 173 A.D.2d at 167 (where agreement that bonus was contingent on continued employment, denying motion to dismiss stating, "[w]hile the parties to a contract are free to make any bargain they wish and are held to bargains made by them with their eyes open, they are not free to enter into contracts which violate public policy. Thus, if the incentive compensation payments were payments of earned wages, the plaintiff could not contract to forfeit them")(internal citations omitted).

## VI.   PLAINTIFF HAS PROPERLY PLED VIOLATIONS OF SECTION 1981, TITLE VII, NYSHRL AND NYCHRL [1]

Plaintiff has adequately pled discriminatory and retaliatory termination pursuant to the anti-discrimination laws alleged in the Complaint. Although Defendants attempt to conflate the pleading requirement of an employment discrimination action with the burden of proof on motion for summary judgment, it is well established that an "employment discrimination complaint need not include such facts [sufficient to establish a prima facie case]." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). In an employment discrimination action, "the ordinary rules for assessing the sufficiency of a complaint applies." *Id.* at 511. This requires only a "short and plain statement

---

[1]      Plaintiff responds to Defendants' arguments relating to Plaintiff's race, national origin and retaliation causes of action collectively as the elements under each law are virtually identical. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. N.Y. 2000); *Liburd v. Bronx Leb. Hosp. Ctr.*, 2009 U.S. Dist. LEXIS 61131 (S.D.N.Y. Apr. 2, 2009)

of the claim," with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557.

### A. Plaintiff Has Adequately Alleged Unlawful Discriminatory Employment Practices

Nevertheless, Plaintiff has alleged facts sufficient to establish a prima facie case of discrimination at the pleading stage.  The elements of an employment discrimination action are: (1) plaintiff's membership in a protected class, (2) his/her qualification for the position, (3) and an adverse employment action, (4) under circumstances that give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (U.S. 1973).  Plaintiff has alleged that he was terminated on account of his race (Caucasian) and national origin (South African and not Japanese), and has done so with facts sufficient to establish a causal relationship thereto.

Defendants argue that Plaintiff's Complaint is deficient because he has not specifically alleged that his job performance was satisfactory.  It is well established that there is a presumption of qualification where an employer has already hired an employee, as opposed to a circumstance involving a refusal to hire. *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) ("[i]n a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualifications is, of course, easier to draw . . . because, by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified").  This position is particularly astonishing given that Defendants hired Plaintiff at sum rate of approximately $1,460,000 in 2007 and $933,000 in 2008.  Defendants claim that Plaintiff's allegation that he was unable to perform business transactions and make his business profitable is an "admission" of his lack of qualification.  In making this argument, Defendant conveniently ignores that it was specifically due to Defendants' discriminatory and retaliatory conduct that

Plaintiff was stymied in his numerous attempts to create a profitable business.  *See*, Def. Mem. at 16; Compl. ¶ 55.

Furthermore, Plaintiff has adequately alleged that he was terminated under circumstances from which discrimination can be inferred.  Plaintiff has alleged, in part, that there were business opportunities provided to less qualified Japanese employees (Compl. ¶ 59); specifically, by way of example only, that Defendants would commonly purchase earthquake derivative insurance policies and then sell their associated risk to third-party companies and although Mr. Cloke-Browne provided valuable client contacts and repeatedly asked to be involved with the negotiation process, his superiors would take his client contacts and allow individuals in Japan to broker the sale of the policies without Mr. Cloke-Browne's input (Complaint at ¶ 57); Defendants would outsource Mr. Cloke-Browne's responsibilities to Japanese employees (Complaint at ¶ 58, 59); Plaintiff was told even though he deserved the highest performance rating of "1," he would be given a lower rating of "2,"  (*Id.* ¶ 61, 62); Plaintiff was grouped with a purported "staff" reduction that exclusively targeted Caucasians, and did not include even a single Japanese employee[2] (Compl. ¶ 63); and, Plaintiff would not be paid his contractually owed, and earned, compensation unless he signed a release of his discrimination claims. (*Id.* ¶ 110-112).  These allegations, which include specific facts from which discrimination can be inferred, far exceed the minimal pleading requirements for a claim of employment discrimination.

Defendants further argue that Plaintiff's claims should be dismissed because Plaintiff did not (1) allege that the opportunities given to individuals of Japanese descent were within the realm of Plaintiff's responsibilities, (2) specifically identify similarly situated employees who received a higher rating than he did, or (3) specifically identify Japanese employees who were

---

[2]        Defendants did not deny this fact in their moving papers.

treated more favorably than him.  Defendants cite no case law for the proposition that an

employment discrimination pleading requires this heightened degree of specificity.

However, Plaintiff specifically alleged that opportunities involving earthquake derivative

insurance policies were provided to Japanese employees despite Mr. Cloke-Browne's valuable

client contacts and requests to be involved and that Mr. Cloke-Browne was passed over for

Japanese employees regarding handling investment funds.  Compl. ¶ 57 – 60.  At the pleading

stage, Plaintiff has no obligation to specifically identify specific Japanese employees who

received higher performance reviews that he did.  Plaintiff's allegation that he was told he would

receive a lower rating than he deserved, particularly when considered under the totality of the

circumstances, gives rise to an inference of discrimination.

Moreover, while Plaintiff is not obligated to specifically identify employees that were

treated more favorably, Plaintiff did in fact identify Daisuke Sugo as a less qualified Japanese

employee that was treated more favorably than him.  *Id.* ¶ 64.  In addition, Plaintiff alleged that

he was terminated on account of his race and/or national origin during a "staff reduction" that

included only Caucasian employees, and no employees of Japanese descent.  Thus, every less

qualified, similarly situated Japanese employee, was treated more favorably than Plaintiff.

### B.  Plaintiff's Title VII Claims As To Defendant MUFG Should Not Be Dismissed

Although naming a specific defendant in a charge of discrimination is generally

understood as a prerequisite to commencing a Title VII action, Courts have taken a "flexible

stance" in interpreting Title VII's procedural provisions, so as not to frustrate Title VII's remedial

goals.  *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991)(*citing Egelston v. State Univ. College

at Geneseo*, 535 F.2d 752, 754 (2d Cir. 1976)).

Thus, Courts have recognized an "identity of interest" exception to the general rule, which permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge. *Id.* The four factors of the "identity of interests" test are (1) whether the role of the unnamed party could be ascertained at the time of the filing of the EEOC complaint; (2) whether the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Johnson,* 931 F.2d at 209.

The interests of the unnamed party herein, Defendant MUFG, and the named party, Defendant BTMU, are virtually identical as BTMU is a wholly owned subsidiary of MUFG. Additionally, there is absolutely no prejudice to Defendant MUFG as Defendant BTMU has been on constructive and actual notice of Plaintiff's claims through its subsidiary MUFG. Compl. ¶ 12, Ex. A. Based on these factors, the interests of Defendants BTMU and MUFG are identical and Plaintiff should be permitted to proceed against Defendant BTMU. *See, Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241-42 (2d Cir. 1995)(reversing dismissal against unnamed parent company, on basis that parent company fell within **"**identity of interest**"** exception as interests of parent and subsidiary were identical).

## VII.   PLAINTIFF HAS PROPERLY PLED AIDING AND ABETTING CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

Defendant Toriumi's argument that he cannot be held personally liable as an "aider and abettor" under New York State Human Rights Law ("NYSHRL") and New York City Human

Rights Law ("NYCHRL") is incorrect, as he directly participated in the discriminatory treatment and termination of Plaintiff's employment and/or had the power to carry out personnel decisions, as alleged in the Complaint.

NYSHRL and NYCHRL provide that it is unlawful for any party to "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." The Second Circuit has interpreted this language to provide for "a co-worker who 'actually participates in the conduct giving rise to a discrimination claim' to be held liable under the" Human Rights Laws. *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004)(quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)). Mr. Cloke-Browne alleged that Defendant Toriumi expressly stated that Mr. Cloke-Browne would get a lower performance rating than he deserved and that Defendant Toriumi was directly involved in the decision to terminate Plaintiff's employment. As such, the actions constitute participation in conduct giving rise to Plaintiff's discrimination claims.

Individual liability under NYSHRL and NYCHRL also may arise where an employee has an ownership interest in the employer or has the power to make personnel decisions. *Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249 (E.D.N.Y. 2009)(citing *Patrowich v. Chemical Bank*, 63 N.Y.2d 541 (N.Y. 1984)). As such, Plaintiff's allegations that Defendant Toriumi had authority to terminate Plaintiff's employment are sufficient at the pleading stage. Compl. ¶ 123; *See Perks v. Town of Huntington*, 96 F. Supp. 2d 222 (E.D.N.Y. 2000)(denying motion to dismiss because "it is enough that Plaintiff adequately alleges that [the individual] had such authority"); *Stordeur v. Computer Assocs. Int'l*, 995 F. Supp. 94, 103 (E.D.N.Y. 1998)(same).

## **CONCLUSION**

WHEREFORE, the Court should issue an order denying Defendants' motion to dismiss in its entirety, and for such other and further relief deemed just and proper.

Dated: New York, New York          Respectfully submitted,
      May 28, 2010

                              THOMPSON WIGDOR & GILLY LLP

By: _____
                       Douglas H. Wigdor
                       David E. Gottlieb

                       85 Fifth Avenue
                       New York, NY 10003
                       Telephone: (212) 257-6800
                       Facsimile: (212) 257-6845
                       dwigdor@twglaw.com
                       dgottlieb@twglaw.com

                       *Counsel for Plaintiff*