**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHRISTOPHER CLOKE-BROWNE                      :

                                             :   Case No.: 10-cv-02249 (LTS)

                                             :   `

                            Plaintiff,        :

                                             :   **PROPOSED CASE**
            v.                                :   **SCHEDULING ORDER AND**
                                             :   **PRELIMINARY PRE-TRIAL**
BANK OF TOKYO-MITSUBISHI UFJ, LTD.,           :   **STATEMENT**
MITSUBISHI UFJ FINANCIAL GROUP, HIDEYUKI      :
TORIUMI, TIMOTHY S. TRACEY, RANDALL C.        :
CHAFETZ, and ANTHONY MOON in their official and :
individual capacities,                        :

                                             :

                            Defendants.       :

                                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

   Plaintiff Christopher Cloke-Browne and Defendants The Bank of Tokyo-Mitsubishi UFJ

("BTMU"), LTD., Mitsubishi UFJ Financial Group ("MUFG"), Hideyuki Toriumi, Timothy S.

Tracey, Randall C. Chafetz and Anthony Moon, by and through undersigned counsel, pursuant to

the Initial Conference Order of Honorable Laura T. Swain, hereby set forth the following

Proposed Case Scheduling Order and Preliminary Pre-Trial Statement:

I.      **Proposed Case Scheduling Order**

        **Fact Discovery**

        Deadline for Service of Initial Disclosures              June 29, 2010

        Deadline for Service of First Set of Interrogatories     July 29, 2010

        Deadline for Service of First Set of Document Requests   July 29, 2010

        Deadline for Amendments to Pleadings as of Right         July 29, 2010

        Deadline for Conclusion of Fact Discovery                December 31, 2010

**Expert Discovery**

| | |
|---|---|
| Deadline for Plaintiff's Designation of Expert | January 14, 2011 |
| Deadline for Service of Plaintiff's Expert Report | January 21, 2011 |
| Deadline for Designation of Defendants' Expert | January 28, 2011 |
| Deadline for Service of Defendant's Expert Report | February 11, 2011 |
| Deadline for Completion of Expert Depositions | February 28, 2011 |

**Summary Judgment**

| | |
|---|---|
| Deadline for Defendants' Motion for Summary Judgment | January 31, 2011 |
| Deadline for Plaintiff's Opposition to Defendant's Motion | March 1, 2011 |
| Deadline for Defendants' Reply | March 15, 2011 |

## II.      Preliminary Pre-Trial Statement

### a.      A concise statement of the nature of the action

This is an action for damages based on Plaintiff's allegations of "whistleblower" retaliation pursuant to the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("Sarbanes-Oxley"), employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), New York State Executive Law §§ 290 *et seq.* ("NYSHRL") and New York State Administrative Code §§ 8-101 *et seq*, ("NYCHRL") unlawful withholding of wages pursuant to New York Labor Law §§ 193 *et seq.*, ("NYLL") as well as New York State law claims of breach of contract, fraudulent inducement, fraudulent concealment and promissory estoppel.

12415345v.2

**b.    A concise statement of each party's position as to the basis of the Court's jurisdiction of the action, with citations to all statutes relied upon and relevant facts as to citizenship and jurisdictional amount.**

The parties jointly submit that this Court has federal question jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 on account of Plaintiff's claims under Sarbanes-Oxley, Title VII and Section 1981.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

**c.    A concise statement of all material uncontested or admitted facts.**

A complete statement of the material uncontested or admitted facts is not currently practical as Defendants have moved to dismiss this action and have not served an Answer to Plaintiff's Amended Complaint.  Nonetheless, the following facts are uncontested:

      **i.**      BTMU is a wholly owned subsidiary of MUFG.

      **ii.**      Plaintiff is a Caucasian male.

      **iii.**      Mr. Cloke-Browne began employment with BTMU in or around March 2007.

      **iv.**      Mr. Cloke-Browne held the position of Senior Vice President of BTMU's Credit Portfolio Management Division for the Americas ("CPMDA").

      **v.**      As Senior Vice President of CPMDA, Mr. Cloke-Browne was responsible for expanding CPMDA by improving revenue and increasing the return on risk for BTMU.

      **vi.**      Mr. Cloke-Browne was terminated effective May 1, 2009.

      **vii.**      BTMU eliminated the Alternative Credit Investment Business.

      **viii.**      Mr. Cloke-Browne filed a charge of discrimination with the EEOC on or about August 31, 2009.

      **ix.**      The EEOC issued a Notice of Right to Sue to Mr. Cloke-Browne dated March 18, 2010.

      **x.**      Mr. Cloke-Browne filed a complaint with the U.S. Department of Labor, Occupational Safety & Health Administration ("OSHA") on or about June 26, 2009.

xi.    Plaintiff withdrew his complaint from OSHA on January 11, 2010.

**d.    A concise statement of all uncontested legal issues.**

Venue and jurisdiction are uncontested legal issues.  In addition, it is uncontested that on June 9, 2010, Plaintiff filed a Notice of Voluntary Dismissal without prejudice with respect to Defendants Masahiro Hosomi and Kyota Omori in both their individual and representative capacities.

**e.    A concise statement of all legal issues to be decided by the Court.**

**i.    Plaintiff's Statement**

All issues other than venue and jurisdiction are contested and will be determined by the Court and/or a jury.

**ii.    Defendants' Statement**

1.    Whether Plaintiff's allegations are too conclusory to survive a motion to dismiss the Complaint.

2.    Whether the Complaint states a claim for breach of contract.

3.    Whether the Complaint states a claim for breach of implied contract.

4.    Whether the Complaint states a claim for fraudulent inducement.

5.    Whether the Complaint states a claim for fraudulent concealment.

6.    Whether the Complaint states a claim for promissory estoppel.

7.    Whether Plaintiff's fraud claims are duplicative of his contract claims.

8.    Whether the Complaint states a claim for violation of the New York Labor Law.

9.    Whether the Complaint states a claim for discrimination under Title VII.

10.    Whether the Complaint states a claim for retaliation under Title VII.

11.    Whether the Complaint states a claim for discrimination under § 1981.

4

12.     Whether the Complaint states a claim of retaliation under § 1981.

13.     Whether the Complaint states a claim for discrimination under the New York State Human Rights Law.

14.     Whether the Complaint states a claim for retaliation under the New York State Human Rights Law.

15.     Whether the Complaint states a claim for discrimination under the New York City Human Rights Law.

16.     Whether the Complaint states a claim for retaliation under the New York City Human Rights Law.

17.     Whether the Complaint states a claim for aiding and abetting liability against any of the individual defendants.

18.     Whether the Complaint states a retaliation claim under SOX.

19.     Whether any of Plaintiff's SOX claims are barred by the applicable statute of limitations.

20.     Whether MUFG can be held liable under § 1981, Title VII, the NYSHRL, NYCHRL, or SOX for any alleged discriminatory or retaliatory conduct alleged in the Complaint.

21.     Whether MUFG can be held liable for breach of contract, breach of implied contract, fraudulent concealment, fraudulent inducement, promissory estoppel or violation of the New York Labor Law.

22.     Whether Mr. Cloke-Browne has mitigated his alleged damages.

23.     Whether Mr. Cloke-Browne may seek punitive damages in this action.

24.     Whether there is a right to a jury trial under the Sarbanes Oxley Act.

**f.     A concise statement of material disputed facts.**

Except as otherwise provided in section c. above, Defendants dispute all of the remaining

factual allegations of the Complaint, including, but not limited to the following:

1.     Defendants deny that BTMU is the largest bank in Japan, that it provides

commercial banking services to corporations internationally (Compl. ¶ 9), that it is an agent of

MUFG, that there is "any understanding that MUFG will retain full control over BTMU" (id. ¶¶ 6, 12), that MUFG has collaborated with BTMU to offer stock options for shares of MUFG common stock to BTMU's directors, corporate auditors and executive officers (id. ¶ 12), that Exhibit C to the Complaint reveals that various directors and officers of MUFG simultaneously held positions with BTMU (id. ¶ 12), and that BTMU operates its internal control systems in accordance with MUFG policy and is otherwise integrated with MUFG. (id. ¶ 13).

2.      Defendants deny that Messrs. Toriumi, Tracey, Chafetz and Moon all had "supervisory authority over Mr. Cloke-Browne and had the power to investigate, discover, or terminate misconduct as . . . covered by the provisions of 18 U.S.C. § 1514A, (id. ¶ 21), that they "were aware of and directly participated in the discrimination and otherwise unlawful employment decisions and actions taken against Mr. Cloke-Browne." (id. ¶ 22).

3.      Defendants deny that they made any promises or provided any assurances to Plaintiff as alleged by Plaintiff in paragraphs 32 through 35, 37, 52-53 and 55 of the Complaint.

4.      Defendants deny that Plaintiff tried to execute a number of deals during his tenure with Defendants (id. ¶ 36), that he identified "a string of opportunities for the Bank including additional lucrative life settlement deals," that such deals were quickly criticized by Mr. Moon as "death bonds" (id. ¶ 40), that BTMU would "commonly purchase earthquake derivative insurance policies," that Mr. Cloke-Browne provided valuable client contacts and was excluded from any sales to such contacts which were brokered in Japan without Plaintiff's input (id. ¶ 57) that they worked with affiliates to set up investment funds, that this was part of Plaintiff's job responsibilities, and that this work was outsourced to Japan. (id. ¶ 58).

5.    Defendants deny that they engaged in any stonewalling practices, that they lacked infrastructure (id. ¶¶ 38, 48), that Mr. Moon agreed to invest in natural catastrophe risks or that he agreed to support, then withdrew support for Plaintiff's business ideas.  (id. ¶§ 41-44).

6.    Defendants deny, upon information and belief, that Mr. Shingeto Chiba approved Plaintiff's Magnolia Insurance financing proposal, told him to present the proposal to the new product committee (id. ¶¶ 45-46), deny that the Magnolia proposal would have been profitable for BTMU (id. ¶ 47) and deny that Mr. Cloke-Browne was told that the Magnolia deal would close.  (id. ¶¶ 45).

7.    Defendants deny, upon information and belief, the existence of the emails referred to in paragraphs 48-49 of the Complaint.

8.    Defendants deny that Plaintiff was unlawfully terminated; that Mr. Testa regularly worked with BTMU; and that Mr. Chafetz directed his staff not to work with Plaintiff.  (id. ¶ 54).

9.    Defendants deny that Plaintiff was precluded from working on particular deals, that he was not given opportunities to make his division successful (id. ¶¶ 54-55), and that he was not permitted meaningful business participation in BTMU's funds and plans.  (id. ¶ 60 ).

10.    Defendants deny that less qualified individuals of Japanese descent were given opportunities that were not provided to Mr. Cloke-Browne and further deny that he was denied any opportunities because of race and/or national origin.  (id. ¶¶ 56, 59).

11.    Defendants deny that Mr. Cloke-Browne was passed over in favor of Japanese employees and further deny that Messrs. Hosomi and Toriumi gave him a lower performance rating than he deserved.  (id. ¶¶ 61-62).

12.     Defendants deny that the March 30, 2009 staff reduction was discriminatory (id. ¶ 63), that Mr. Sugo was not terminated because of his Japanese ancestry (id. ¶ 64) and that they were aware of Mr. Cloke-Browne's national origin as being from Zimbabwe.  (id. ¶ 65).

13.     Defendants deny that Mr. Cloke-Browne had an employment contract, that he is contractually owed $733,333.00, that he earned these funds (id. ¶¶ 66-70), that they have refused to pay Mr. Cloke-Browne $733,333.00 for discriminatory or retaliatory reasons and that their refusal to pay Mr. Cloke-Browne $733,333.00 is a violation of the New York public policy and New York Labor Law.  (id. ¶¶ 71-74, 88-89).

14.     Defendants deny that Mr. Cloke-Browne warned them that "serious violations of the securities laws and MUFG's obligations as a publicly-traded company were occurring and/or might occur" (id. ¶ 75), that he circulated reports of improper calculation of risk, shareholder fraud and/or highlighted major deficiencies at the Company (id. ¶¶ 76-77), and that they commented that senior management "should be able to learn by themselves."  (id. ¶ 78).

15.     Defendants deny that Mr. Cloke-Browne attended meetings to "discuss the future of the Department" and that he "expressed concern over the business practices of BTMU/MUFG and their calculations of exposure in the U.S. (id.¶ 78), that Mr. Tracey "afforded AIG the second highest rating in the BTMU rating scale," that he desired to "downplay any risk arising from AIG" (id. ¶ 79)and that Mr. Cloke-Browne was terminated unlawfully or "in a blatant attempt to silence him."  (id. ¶ 80).

16.     Defendants deny that Mr. Chafetz retaliated against Mr. Cloke-Browne by appointing Martin Palmeri to the position of Head of Structured Solutions", that Mr. Palmeri's positions and investment books lost billions of dollars for BTMU, that his unit was unprofitable

12415345v.2

(<u>id</u>. ¶ 82) and that Mr. Chafetz told "all of his employees to cease working with Mr. Cloke-Browne." (<u>id</u>. ¶¶ 81, 83).

17.    Defendants deny that Mr. Tracey excluded Mr. Cloke-Browne from meetings where deals and risks were being discussed "in an attempt to retaliate against [him] for his financial opinions" (<u>id</u>. ¶ 85), downplayed Mr. Cloke-Browne's complaints and sent Mr. Zlotnick to silence him "by telling him to refrain from circulating any e-mails about AIG." (<u>id</u>. ¶ 84).

18.    Defendants deny that Mr. Moon retaliated against Mr. Cloke-Browne and deny that he was "integrally involved in the . . . actions by Mr. Tracey and Mr. Chafetz" and further deny that he participated in the decision to terminate Mr. Cloke-Browne. (<u>id</u>. ¶ 86).

19.    Defendants deny that Mr. Cloke-Browne reported any "potential fraud;" deny that they sought to "keep the Board in the dark" and further deny that they retaliated against Plaintiff. (<u>id</u>. ¶ 87).

20.    Defendants deny that BTMU, MUFG and Messrs. Tracey, Chafetz and Moon retaliated against him in violation of SOX. (<u>id</u>. ¶¶ 91-94).

21.    Defendants deny that BTMU, MUFG and Mr. Toriumi discriminated or retaliated against Plaintiff on the basis of his race and/or national origin in violation of Section 1981 (<u>id</u>. ¶¶ 96-100, 102-104).

22.    Defendants deny that BTMU, MUFG and Mr. Toriumi discriminated or retaliated against Plaintiff in violation of the New York State Human Rights Law (<u>id</u>. ¶¶ 106-108, 110-112) or the New York City Human Rights Law (<u>id</u>. ¶¶ 114-117, 119-121) and further deny that Mr. Toriumi aided and abetted any violation of these laws. (<u>id</u>. ¶¶ 123-127).

23.     Defendants deny that BTMU and MUFG discriminated or retaliated against Plaintiff on the basis of race and/or national origin in violation of Title VII of the Civil Rights Act of 1964.  (id. ¶¶ 129-132, 134-136).

24.     Defendants deny that they made any material false representations to Plaintiff and further deny that they engaged in fraudulent inducement or fraudulent concealment.  (id. ¶¶ 137-143, 145-150).

25.     Defendants deny that Plaintiff had an employment contract and further deny that they breached any agreement with Plaintiff.  (id. ¶¶ 152-154).

26.     Defendants deny that they breached any implied contract with Plaintiff.  (id. ¶¶ 156-160).

27.     Defendants deny that they violated the New York Labor Law.  (id. ¶¶ 162-167).

28.     Defendants deny that they made any promises to Plaintiff and further deny that the doctrine of promissory estoppel applies in the employment context.  (id. ¶¶ 169-174).

29.     Defendants deny that Mr. Cloke-Browne has suffered irreparable harm, economic loss, emotional injury or any other damages as a result of the acts alleged in the Complaint.

**g.     A concise statement by each plaintiff and each counterclaimant of the legal basis of each cause of action asserted, including citations to all statutes, Federal Rules of Civil Procedure, other rules and case law intended to be relied upon by such plaintiff or counterclaimant.**

1.     Plaintiff is entitled to relief under Sarbanes-Oxley as he made complaints and engaged in other oppositional activity related to BTMU and MUFG's engagement in conduct that he reasonably believed constituted shareholder fraud and he was subject to a diminution in the terms and conditions of employment as a result of such complaints, including but not limited to the termination of his employment.  *Gattegno v. Admin. Review Bd.*, 353 Fed. Appx. 498, 500 (2d Cir. 2009)

10

2.      Plaintiff is entitled to relief under Title VII, Section 1981, NYSHRL and NYCHRL as he was discriminated against with regard to the terms and conditions of employment on account of his race (Caucasian) and national origin (African-descent), and his engagement in protected activity, including but not limited to the termination of his employment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (U.S. 1973).  The discrimination to which Plaintiff was subjected was aided and abetted by Defendant Toriumi, who had the power to make personnel decisions.  *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004); *Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249 (E.D.N.Y. 2009).

3.      Plaintiff is entitled to relief under NYLL as his minimum guaranteed bonuses and deferred compensation were earned wages under §191, which therefore cannot be withheld pursuant to §193.  Defendants unlawfully withheld these earned wages subject to Plaintiff's execution of a release. *Bentley v. ASM Communications, Inc.*, 1991 U.S. Dist. LEXIS 7855 (S.D.N.Y. June 11, 1991); *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253 (2d Cir. 1999); *Truelove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220 (N.Y. 2000).

4.      Plaintiff is entitled to relief as a result of Defendants' breach of contract.  Plaintiff was entitled to earned wages including minimum guaranteed bonuses and deferred compensation pursuant to an employment contract.  Defendants breached the employment contract when such wages were withheld and conditioned on the execution of a release.

5.      Plaintiff is entitled to relief as a result of Defendants' breach of implied contract as Plaintiff detrimentally relied on representations in Defendants' Compliance Handbook that limited Defendants' right to terminate him at-will.  *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 851 (2d Cir. 1985); *Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 465-466 (N.Y. 1982); *Baron v. Port Auth.*, 271 F.3d 81, 85 (2d Cir. 2001); *Lobosco v. New York Tel.*, 727 N.Y.S.2d 383 (2001).

6.      Plaintiff is entitled to relief as a result of Defendants' tortious conduct including fraud in the inducement, fraud in the concealment and promissory estoppel.  Defendants made affirmative misrepresentations and omissions regarding the terms and conditions of Plaintiff's employment, which were made with the present intent to deceive.  Plaintiff reasonably relied on these misrepresentations and omissions when he refused alternative employment opportunities, accepted Defendants' offer of employment and continued employment thereafter.  *National Union Fire Ins. Co. v. Worley*, 257 A.D.2d 228 (1st Dept. 1999); *Albert Apartment Corp. v. Corbo Co.*, 182 A.D.2d 500 (1st Dept. 1992); *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Md.*, 1990 U.S. Dist. LEXIS (S.D.N.Y. 1990); *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 22 (S.D.N.Y. 2009); *Congress Fin. Corp*, 790 F. Supp. 459, 472 (S.D.N.Y. 1992).

**h.      A concise statement of the legal basis of each defense asserted or expected to be asserted by such party, including citations to all statutes, Federal Rules of Civil Procedure, other rules and case law intended to be relied upon by such party.**

1.      The Complaint fails to state any claim upon which relief can be granted. Although Mr. Cloke-Browne asserts that he was the victim of discrimination and retaliation on the basis of his race and national origin, under Title VII, the NYSHRL, the NYCHRL and Section 1981, the alleged acts about which he complains, do not state a viable cause of action for discrimination.  Gatto v. Jet Blue Airways, No. 2009 Civ. 983 (LTS)(KNF), 2010 WL 125974 (S.D.N.Y. Jan. 13, 2010); Williams v. Time Warner Inc., No. 09 Civ. 2962 (RJS), 2010 WL 846970, at *3 (S.D.N.Y. Mar. 3, 2010).  To the extent that Plaintiff is seeking to recover for discrimination on the basis of national origin under Section 1981, his claim must be dismissed since Section 1981 does not prohibit discrimination on the basis of national origin.  Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998).

2.      The Complaint fails to state a viable claim of retaliation because Mr. Cloke-Brown has not alleged that he engaged in any activity protected by the discrimination laws. Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006); Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 305, 341 (S.D.N.Y. 2009).

3.      The Complaint fails to state a viable claim for aiding and abetting liability against Defendant Toriumi for several reasons: first, the Complaint does not adequately plead any discrimination, Falchenberg v. N.Y. State Dep't of Educ., 338 Fed. Appx. 11, 14 (2d Cir. June 8, 2009) and second, there is no allegation that Defendant Toriumi actively participated in any of the alleged discriminatory actions.  Hirsch v. Columbia Univ., 293 F. Supp. 372, 381 (S.D.N.Y. 2003).

4.      Plaintiff has no viable SOX claim since there is no allegation of any conduct that alerted BTMU that he believed the company was violating any federal rule or law related to fraud against shareholders.  Pardy v. Gray, No. 07 Civ. 6324 (LAP), 2008 WL 2756331 (S.D.N.Y. July 15, 2008); Portes v. Wyeth Pharm., Inc., No. 06 Civ. 2689 (WHP), 2007 WL 2363356 (S.D.N.Y. Aug. 20, 2007).

5.      Most of Plaintiff's SOX claims are time-barred since he failed to file a SOX complaint within ninety days of the alleged retaliatory action.  Portes v. Wyeth Pharm., Inc., No. 06 Civ. 2689 (WHP), 2007 WL 2363356 (S.D.N.Y. Aug. 20, 2007); In re Carter v. Champion Bus, Inc., ARAB No. 05-076, 2006 WL 3246909 (ARAB Sept. 29, 2006).

6.      Defendant MUFG is not a proper party to this action for several reasons:  first, Plaintiff did not name MUFG as a respondent in Plaintiff's EEOC charge and it was not named in the Right to Sue letter, therefore, Plaintiff failed to follow procedural requirements prior to filing a Title VII claim against MUFG, Johnson v. Palma, 931 F.2d 203, 210 (2d Cir. 1991);

Knafel v. Pepsi-Cola Bottlers, Inc., 899 F.2d 1473, 1480-81 (6th Cir. 1990); second, Mr. Cloke-Browne cannot take advantage of the identity of interest doctrine since he was represented by counsel at the time that he filed his EEOC charge, Darden v. DaimlerChrysler N. Am., 191 F. Supp. 2d 382 (S.D.N.Y. 2002); and third, MUFG is not Plaintiff's employer, and therefore, has no liability to Plaintiff.  Brady v. Calyon Sec. (USA) Inc., 406 F. Supp. 2d 307 (S.D.N.Y. 2005).

7.      Defendants cannot be liable for breach of contract because Mr. Cloke-Browne was an at-will employee and such a claim does not lie under New York law.  Junk v. Aon Corp., No. 07 Civ. 4640 (LMM)(GWG), 2007 WL 4292034 (S.D.N.Y. 2007).  Further, the offer letter on which Plaintiff relies as his employment contract, was not breached by BTMU, the only signatory other than Plaintiff to the letter.

8.      Plaintiff's breach of an implied contract claim fails because Plaintiff did not identify the policy upon which he relies and because policy statements contained in employee manuals or other company policies do not create binding contracts, particularly where there are disclaimers to those policies.  Kessler v. Time Warner Cable, 19 Misc.3d 1126A, 2008 N.Y. Slip Op 50860U (Sup. Ct. 2008); Bernhardt v. Tradition N. Am., 676 F. Supp. 2d 301 (S.D.N.Y. 2009); Fraser v. Fid. Trust Co., Int'l, No. 04 Civ. 6958 (PAC), 2009 WL 2601389 (S.D.N.Y. Aug. 25, 2009).

9.      Plaintiff cannot state a claim for fraudulent inducement since each of his claimed misrepresentations relate to a future event, not an existing fact.  Dooner v. Keefe, Bruyette & Woods, Inc., 157 F. Supp. 2d 265, 279 (S.D.N.Y. 2001); Woodie v. Azteca Intern. Corp., 9 Misc.3d 1104A, 2005 NY Slip Op 51401U (Sup. Ct. 2005).  Moreover, claims of fraudulent inducement made to an at-will employee such as Plaintiff are not cognizable, since reliance on representations of future intentions is unreasonable as a matter of law.  Eternity Global Master

14

Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168 (2d Cir. 2004); Brady v. Calyon Sec. (USA) Inc., 406 F. Supp. 2d 307 (S.D.N.Y. 2005).

10.     Plaintiff cannot sustain his fraudulent concealment claim because, like his fraudulent inducement claim, his fraudulent concealment came relates to future events not present facts.  In addition, as an at-will employee, Plaintiff cannot plead justifiable reliance as a matter of law.  Weintraub v. Phillips, Nizer, Benjamin, Krim, & Ballon, 172 A.D.2d 254 (1st Dep't 1991); Hoeffner v. Orrick, 61 A.D.3d 614 (1st Dep't 2009); Rushing v. Nexpress Solutions, Inc., No. 05 Civ. 6243 (CJS), 2009 WL 104199, at *5 (W.D.N.Y. Jan. 14, 2009).

11.     Promissory estoppel does not lie in the employment context and Plaintiff's claims for promissory estoppel should be dismissed.  Bessemer Trust Co., N.A. v. Branin, 498 F. Supp. 2d 632 (S.D.N.Y. 2007): Shapira v. Charles Schwab & Co., 225 F. Supp. 2d 414 (S.D.N.Y. 2002).

12.     Plaintiff cannot sustain both his contract and his fraud claims which are duplicative of each other.  Smart Egg Pictures, S.A. v. New Line Cinema Corp., 213 A.D.2d 302, 303 (1st Dep't 1995); Dooley v. Metro. Jewish Health Sys., No. 02-CV-4640 (JG), 2003 WL 22171876 (E.D.N.Y. July 30, 2003).

13.     Plaintiff has not pled fraud with the specificity required by Federal Rule of Civil Procedure 9(b).  Hirsch v. Columbia Univ., 293 F. Supp. 372, 381 (S.D.N.Y. 2003).

14.     It is not a violation of public policy to condition payment on execution of a release.  Kaul v. Hanover Direct, Inc., 296 F. Supp. 2d 506 (S.D.N.Y. 2004) aff'd, 148 Fed. Appx. 7 (2d Cir. 2005).

15.     Plaintiff did not earn the funds he seeks since he failed to comply with the condition precedent of remaining employed.  DeSantis v. Deutsche Bank Trust Co. Ams., Inc.,

15

12415345v.2

501 F. Supp. 2d 593 (S.D.N.Y. 2007); Anderson v. Sotheby's, Inc., No. 04 Civ. 8180 (SAS),

2006 WL 1722576 (S.D.N.Y. June 22, 2006); Baraliu v. Vinya Capital L.P., No. 07 Civ. 4626

(MHD), 2009 WL 959578 (S.D.N.Y. Mar. 31, 2009).

16.     Section 198-c(2) of the New York Labor Law addresses the payments which

Plaintiff seeks and specifically provides that said section does not apply to executives such as

Mr. Cloke-Browne.  Jacobs v. Claire's Stores, Inc., No. 08 Civ. 4481 (TPG), 2009 WL 2474108

(S.D.N.Y. Aug. 12, 2009); Monagle v. Scholastic, Inc., No. 06 Civ. 14342 (GEL), 2007 WL

766282 (Mar. 9, 2007).

17.     BTMU has a firm policy against discrimination in the workplace requiring it to

investigate any complaints of discrimination.  During his employment with BTMU, Mr. Cloke-

Browne did not raise any issue of discrimination or retaliation.

i.      **A concise statement of the measure of proof and on whom the burden falls as to each cause of action or defense.**

Plaintiff's Statement

Plaintiff must prove all causes of action alleged in the Complaint by a preponderance of

the evidence.  Defendants must prove all affirmative defenses by a preponderance of the

evidence.

Defendant's Statement

1.      With regard to plaintiff's claims of discrimination and retaliation, Plaintiff must

establish a *prima facie* case by demonstrating that (1) he is a member of a protected class; (2) he

was subject to an adverse employment action; and (3) similarly-situated individuals who were

not members of the protected class were treated more favorably.  With regard to plaintiff's

claims of retaliation, plaintiff must establish a *prima facie* case by demonstrating that (1) he

participated in an activity protected under law; (2) defendant took a materially adverse

16

employment action against him; and (3) there was a causal connection between the protected

activity and the adverse employment action.  Once plaintiff has established a *prima facie* case,

the burden shifts to defendant to produce a non-discriminatory or non-retaliatory reason for the

allegedly adverse employment action.  Once defendant has done so, the plaintiff can prevail only

by showing that the proffered reason was pretextual and/or that the real reason for the challenged

action was discrimination or retaliation.

      2.      With respect to Plaintiff's claim of breach of contract, Plaintiff, an at-will

employee, must establish the existence of a contract and its breach.

      3.      With respect to Plaintiff's claim of breach of implied contract, Plaintiff has the

burden of proving that the Defendants' Compliance Handbook, created an implied contract.

      4.      With respect to Plaintiff's claim for fraudulent inducement, Plaintiff must prove

by clear and convincing evidence that: (1) the defendants knowingly misrepresented a material

fact; (2) the misrepresentation was made for the purpose of inducing him to rely on it; (3) he

justifiably relied on that misrepresentation; and (4) he was injured.

      5.      With respect to Plaintiff's claim for fraudulent concealment, Plaintiff has the

burden of proving by clear and convincing evidence: (1) a failure to discharge a duty to disclose;

(2) an intention to defraud; (3) reliance; and (4) damage.

      6.      With respect to Plaintiff's claim for promissory estoppel, Plaintiff must prove

first, that promissory estoppel is applicable in the employment context in New York and second,

Plaintiff must prove: (1) a failure to discharge a duty to disclose; (2) an intention to defraud; (3)

reliance; and (4) damage.

7.    With respect to Plaintiff's claim under the New York Labor Law, Plaintiff bears the burden of proving that he earned the money he seeks and that he is an employee covered by the Labor Law to whom severance is owed.

8.    With respect to Plaintiff's claims of aiding and abetting liability of the individual defendants, Plaintiff must demonstrate that the individuals who he seeks to hold liable under such a theory: (1) have an ownership interest in the employer, or are the employer, (2) have the power to make, rather than carry out, personnel decisions or (3) have actually participated in the conduct giving rise to the discrimination claim.

9.    With respect to Plaintiff's SOX claim, he must prove that (1) he engaged in an activity protected by SOX; (2) his employer, BTMU, either actually or constructively, knew or suspected that he engaged in protected activity; (3) he suffered an unfavorable employment action; and (4) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action."

**j.    Whether and to what extent amendment to pleadings and/or the addition or substitution of parties will be required, and proposed deadlines therefor.**

The parties respectfully request the Court's permission to proceed in accordance with the Proposed Case Scheduling Order, above, which provides for a deadline for amendment of pleadings as of right of July 29, 2010.

**k.    A statement as to whether all parties consent to transfer of the case to a magistrate judge for all purposes, including trial (without identifying which parties have or have not so consented)**

The parties do not consent to a transfer of the case to a magistrate judge for all purposes.

**l.    What, is any, changes should be made in the timing, for or requirements for disclosures under Fed. R. Civ. P. 26(a), including a statement as to when any disclosures required under Fed. R. Civ. P. 26(a)(1) were made or will be made.**

18

The parties respectfully request the Court's permission to proceed in accordance with the Proposed Case Scheduling Order, above.

**m.    The subjects on which disclosure may be needed and a proposed discovery cut-off date.**

Disclosure will be needed as to causes of action and allegations of Plaintiff's Complaint and any and all allegations and/or defenses set forth or anticipated to be set forth in Defendants' Answer, pending resolution of Defendants' motion to dismiss.  In addition, the parties respectfully request the Court's permission to proceed in accordance with the Proposed Case Scheduling Order, above.

**n.    Whether and to what extent expert evidence will be required, and proposed deadlines for expert discovery.**

The parties reserve the right to retain experts, and respectfully request the Court's permission to proceed in accordance with the Proposed Case Scheduling Order, above.

**o.    What, if any, changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules of court, and what other limitations should be imposed.**

No limitations should be made on discovery under the Fed. R. Civ. P or the Local Rules of Court.  The parties respectfully request the Court's permission to proceed in accordance with the Proposed Case Scheduling Order, above.

**p.    The status of settlement discussions and the prospects for settlement of the action in whole or in part, <u>provided</u> that the Preliminary Pre-Trial Statement must not disclose to the Court specific settlement offers or demands.**

The parties have had preliminary settlement discussions and have agreed that discovery would assist the parties in evaluating the prospects for settlement.

**q.    A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days expected to be needed for presentation of that party's case.**

19

To the extent that a jury trial is legally permissible, the case will be tried to a jury.  The parties each expect 5 days for their case-in-chief.

**r.      Any other orders that should be entered by the Court under Fed. R. Civ. P. 26(c) or Fed. R. Civ. P. 16(b) and (c).**

The parties do not currently request any additional orders.

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP          SEYFARTH SHAW


By: ____s/_____          By: ____s/_____
      Douglas H. Wigdor                                    Peter A. Walker
      David E. Gottlieb                                     Lori M. Meyers
      85 Fifth Avenue, Fifth Floor                         620 Eighth Avenue
      New York, New York 10003                             New York, New York 10018
      Phone: (212) 257-6800                                Phone: (212) 218-5500
      Facsimile: (212) 257-6845                            Facsimile: (212) 218-5526
      dwigdor@twglaw.com                                   pwalker@seyfarth.com
      dgottlieb@twglaw.com                                 lmeyers@seyfarth.com
      *Attorneys for Plaintiff*                             *Attorneys for Defendants*